[Crim. No. 4238. Fourth Dist., Div. One. May 18, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL JOSEPH MAYS et al., Defendants and Appellants.

## COUNSEL

Kevin W. Midlam, under appointment by the Court of Appeal, for Defendants and Appellants.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Alexander B. McDonald, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**THE COURT.**—Michael Joseph Mays and Benjamin A. Sam appeal their court tried convictions for kidnaping (Pen. Code, § 207), two counts each of forcible oral copulation (Pen. Code, § 288a), and two counts each of forcible rape. (Pen. Code, § 261.3). Execution of sentences for kidnaping were stayed pending appeal, to become permanent upon completion of the sentences for the other crimes which are being served concurrently.

We detail the facts both because defendants contend the victim's testimony was inherently improbable and because of the warning afforded to the increasing number of young girls who seem to consider hitchhiking an acceptable part of their life style.

After attending a party in the Hillcrest area of San Diego the night of August 17-18, 1969, 21-year-old Sylvia, foolishly hitched a ride between 2 and 3 a.m., intending to go to Ocean Beach to spend the rest of the night with a girl friend. The defendants, Marines stationed at Camp Pendleton, picked up the hitchhiking Sylvia and after a stop for gasoline, drove her to the corner of West Point Loma and Nimitz Boulevard in the Ocean Beach area.

Sylvia gave defendants directions to the freeway, left the car and walked west on West Point Loma Boulevard. After leaving, defendants returned, accosted Sylvia and asked for directions to the freeway. She said she had

already directed them. Defendant Sam got out of the car, approached Sylvia and voiced an intention to have sexual intercourse with her.

Sam grabbed Sylvia, she kicked, fought and screamed as loudly as she could. Her screams were heard by two residents of the area. Sam hit Sylvia about the face with his fist and forced her into the front seat of the car. Sam continued striking Sylvia because she would not stop screaming. Sam slammed the car door and Mays drove off with tires squealing. Every time Sylvia made a noise, Sam hit her. She quieted.

Sam pushed Sylvia onto the car's back seat and ordered her to take off all her clothes, threatening to kill her if she didn't obey. Sylvia cried and was struck whenever she made a noise. Sylvia took off her clothing.

Sam removed most of his clothing, covered Sylvia's face with a towel, hit Sylvia again, then had sexual intercourse with her. Sylvia said Sam then pushed her over on her stomach and committed an act of anal intercourse on her. The trial judge gave defendants the benefit of a reasonable doubt actual penetration occurred and acquitted them of two charges of sodomy. During these acts the car remained in motion, driven by Mays.

Mays stopped the car, changed places with Sam and removed most of his clothes. He ordered Sylvia on her back, told her to shut up and had sexual intercourse with her. Mays then forced Sylvia to orally copulate his penis.

Sam stopped the car on Harbor Drive. Mays let Sylvia put her clothes back on. She directed defendants to the freeway and begged to be set free. Sam said "We can't let her go; she'll tell someone; we're going to have to kill her. Besides, I'm not through with her yet."

Sam drove north on Interstate 5. Mays ordered Sylvia to remove her clothing again. She took her pants off. Mays forced her to orally copulate him again. Mays then had another act of sexual intercourse with Sylvia. Sylvia said Mays then forced her over on her stomach and performed an act of sodomy. As noted, the court entertained a reasonable doubt penetration occurred. Mays turned Sylvia back over and resumed sexual intercourse.

Sam stopped the car on an off-ramp. Mays said he was through and traded places with Sam.

Mays drove further north, pulled off at Del Mar Heights Road and parked. Sam engaged in further sexual intercourse, sodomy, oral copulation, then intercourse again.

Mays saw a Highway Patrol car approaching, warned Sam and tried to

drive off. The patrol car pulled up behind the car, forcing it to stop. Sam warned Sylvia to keep quiet as he had a gun and would shoot her.

As the officers checked defendants' identifications, Sylvia managed to get out of the car and warned the officers Sam had a gun. She appeared frightened, shook violently and sobbed. She told the officers she had been raped and her life threatened. Her clothing was in disarray and her hair mussed. Sylvia had bruises and abrasions on her face, inside her mouth and on her arms. A medical examination confirmed she had had sexual contact.

■ ■ Defendants contend Sylvia's testimony was so inherently improbable as to be incredible and thus legally insufficient to justify the convictions. They point to several claimed inconsistencies in Sylvia's testimony and to evidence tending to impeach her. Defendants also allude to Sylvia's allegedly unchaste character and the fact she would hitchhike during early morning hours as somehow affecting her credibility. None of the matters raised by defendants compels the conclusion Sylvia was untruthful. Nor do we find, as contended by defendants, it would have been physically impossible for them to have accomplished the number of sex acts testified to by Sylvia in the hour and a half she said she was in the car. Not all the acts were pursued to sexual climax. The trial court did not abuse its discretion by believing Sylvia's testimony.

■ Defendants contend they cannot be convicted of kidnaping, as any movement of Sylvia within San Diego County must be viewed as incidental to the commission of the sex offenses (*People* v. *Daniels,* 71 Cal.2d 1119, 1139 [80 Cal.Rptr. 897, 459 P.2d 225]; *People* v. *Schafer,* 4 Cal.App.3d 554, 560-561 [84 Cal.Rptr. 464]). *People* v. *Timmons,* 4 Cal.3d 411, 415 [93 Cal.Rptr. 736, 482 P.2d 648], tells us "The true test in each case is not mere mileage but whether the movements of the victims *'substantially increase the risk of harm'* beyond that inherent in the [other crime committed] itself."

Here, the trial court specifically found Sylvia's risk of harm was increased because the continued movement of the car gave defendants the opportunity to subject her to a number of different episodes of abuse and a series of episodes such as those involved in this case which wind up in an isolated area subjects the victim to the possibility of being cast out and facing substantial harm in fighting back to civilization.

Additionally, Sylvia's peril was greatly increased by her confinement and movement when she begged to be released and was refused, not only because Sam wasn't through with her, but because he thought they were

going to have to kill her. At least from that point on the kidnaping was not merely incidental to the sex crimes but also constituted a threat to Sylvia's life.

Judgments affirmed.