## No. 79SA252

### The People of the State of Colorado v. Walter T. Bridges

(612 P.2d 1110)

Decided May 19, 1980.     Opinion modified and as modified rehearing denied July 14, 1980.

J. D. MacFarlane, Attorney General, Richard F. Hennessey, Deputy, Mary J. Mullarkey, Solicitor General, Susan P. Mele-Sernovitz, Assistant Attorney General, for plaintiff-appellee.

J. Gregory Walta, State Public Defender, Michael Heher, Deputy, for defendant-appellant.

*En Banc.*

JUSTICE DUBOFSKY delivered the opinion of the Court.

The defendant Walter Tyler Bridges appeals his convictions for first-degree sexual assault, and first-degree kidnapping, and robbery. These convictions arose from a single incident, and sentences were imposed concurrently. We reverse the defendant's conviction for first-degree kidnapping, and affirm the sexual assault and robbery convictions.

The victim, a Colorado Springs school teacher, worked until about 7:30 p.m. on October 1, 1976. As she left the school building and walked to her car parked at the curb along the school grounds, she saw the defendant standing near the building and then heard footsteps behind her as she approached her car. The defendant knocked her to the ground, struck her, tore at her clothes, and dragged her back to the school yard where he took her small backpack containing a wallet. When he moved away from her to see if anyone was coming, she attempted to run. He caught her and repeatedly hit her head against a retaining wall, saying "See if you ever run away again."

He then dragged her to another part of the well lighted school ground, and sexually assaulted her. The victim testified that the defendant's comments were nearly incoherent, and that she was afraid he was going to kill her. Someone in a neighboring house heard her scream and called the police. When the police arrived, the defendant ran, escaping through neighboring yards. The victim suffered multiple bruises and abrasions, and was hospitalized for four days for possible concussion.

The victim identified the defendant in a line-up on November 22, 1976. He then was charged with first-degree sexual assault, first-degree assault, and simple robbery. On January 10, 1977, the information was amended to add a count of first-degree kidnapping.

After conviction, the trial court sentenced the defendant to thirty-four to thirty-eight years in the penitentiary for the sexual assault, nine to ten years for robbery, and life imprisonment for the kidnapping, the sentences to be served concurrently.[1]

The defendant contends on appeal that there was insufficient evidence of either asportation or an intent to force the victim to make a concession to secure her release to support a first-degree kidnapping conviction. The defendant also contends that the trial court erred in failing to include a *mens rea* element in the jury instruction on first-degree sexual

---

[1] The pre-sentence report provided to the court reflected police and probation officer views that the defendant, who had had a number of encounters with the police, was incorrigible.

assault.

## I.

The kidnapping charge here appears to have been added almost as an afterthought. The incidents alleged as the basis of first-degree kidnapping, perhaps technically within the language of the statute, are not within the traditional definitions of kidnapping. At common law, kidnapping was a misdemeanor limited to the forcible abduction of a person to a country other than his own. In the 1930's, state legislatures expanded the traditional common law concept, creating new substantive crimes. Colorado defined simple kidnapping as a seizure and asportation or detention[2] and aggravated kidnapping as a taking for the purpose of "extorting ransom or money or other valuable thing or concession."[3] The expanded definitions brought within the scope of kidnapping conduct also punishable under some other criminal provision: *e.g.*, extortion, homicide, assault, rape, and robbery.[4]

The penalties for kidnapping are more severe than those for many of the crimes included within the kidnapping definition. The drafters of the Model Penal Code suggested that the scope of a crime like kidnapping, which has importance as a crime chiefly because it is an attempt to commit one of the other offenses, be restricted because:

"Examples of abusive prosecution for kidnapping are common. Among the worst is use of this means to secure a death sentence or life imprisonment for behavior that amounts in substance to robbery or rape, in a jurisdiction where these offenses are not subject to such penalties."

Model Penal Code section 212.1, Comment (tent. Draft No. 11, 1960), pp. 13-14.[5]

Notwithstanding the concern that a kidnapping charge can be used to obtain a sentence not otherwise available to the prosecution, it may still be charged as a separate offense additional to charges of rape or robbery. *See People v. Hines,* 194 Colo. 284, 572 P.2d 467 (1978); *People v. Levy,* 15 N.Y.2d 159, 204 N.E.2d 842, 256 N.Y.S.2d 793, *cert. denied,* 381 U.S. 938, 85 S.Ct. 1770, 14 L.Ed.2d 701 (1965); *People v. Miles,* 23 N.Y.2d 527, 245 N.E.2d 688, 297 N.Y.S.2d 913, *cert. denied,* 395 U.S. 948, 89 S.Ct. 2028, 23 L.Ed.2d 467 (1969). However, when a defendant, as here, is subject to enhanced punishment because his conduct, which constituted the crime of robbery and sexual assault, may also

---

[2] Colo. Sess. Laws 1933, ch. 62, section 1(1), (2), (3) at 423.

[3] Colo. Sess. Laws 1933, ch. 62, section 1(4) at 424.

[4] Note, *A Rationale of the Law of Kidnapping,* 53 *Colum. L. Rev.* 540 (1953).

[5] The Comment's concern about kidnapping charged as an alternative or cumulative treatment of behavior where the chief significance is robbery or rape should be distinguished from "traditional" or "conventional" kidnapping focussing on extortion, murder or taking hostage. *People v. Adams,* 389 Mich. 222, 205 N.W.2d 415 (1973); *People v. Miles,* 23 N.Y.2d 527, 245 N.E.2d 688, 297 N.Y.S.2d 913, *cert. denied,* 395 U.S. 948, 89 S.Ct. 2028, 23 L.Ed.2d 467 (1969).

fit within the general language of the kidnapping statute, the restrictive scope recommended by the drafters of the Model Penal Code and a number of other state courts is needed. *See e.g., People v. Daniels,* 71 Cal. 2d 1119, 459 P.2d 225, 80 Cal. Rptr. 897 (1969); *People v. Levy, supra; People v. Adams,* 389 Mich. 222, 205 N.W.2d 415 (1973); *Wright v. State,* _____Nev. _____, 581 P.2d 442 (1978); *People v. Lombardi,* 20 N.Y.2d 266, 229 N.E.2d 206, 282 N.Y.S.2d 519 (1967); *State v. Fulcher,* 34 N.C.App. 233, 237 S.E.2d 909 (1977), *aff'd,* 294 N.C. 503, 243 S.E.2d 338 (1978).

Some jurisdictions have limited the scope of kidnapping statutes by the application of the merger doctrine. This permits convictions for multiple charges only if different evidence supports each charge. In three cases where the asportation and detention in an isolated place were greater than here, a New York court discussed the merger doctrine as one

"[b]ased on an aversion to prosecuting a defendant on a kidnapping charge in order to expose him to the heavier penalty thereby made available, where the period of abduction was brief, the criminal enterprise in its entirely appeared as no more than an offense of robbery or rape, and there was lacking a genuine 'kidnapping' flavor . . . .

. . . .

"The merger doctrine is intended to preclude conviction for kidnapping based on acts which are so much the part of another substantive crime that the substantive crime could not have been committed without such acts and that independent criminal responsibility may not fairly be attributed to them."

*People v. Cassidy,* 40 N.Y.2d 763, 765-66, 767, 358 N.E.2d 870, 872, 873, 390 N.Y.S.2d 45, 47 (1976).

*See also State v. Johnson,* 92 Wash.2d 671, 600 P.2d 1249 (1979).

■■ However, under the merger doctrine in Colorado, we compare the elements of the applicable statutes, not the particular evidence presented on these elements. *People v. Rivera,* 186 Colo. 24, 525 P.2d 431 (1974); *People v. Hancock,* 186 Colo. 30, 525 P.2d 435 (1974). A comparison of the provisions of section 18-3-301(1)(a), C.R.S. 1973 (now in 1978 Repl. Vol. 8), *infra,* section 18-3-402, C.R.S. 1973 (1976 Supp.; current version in 1978 Repl. Vol. 8),[6] and section 18-4-301(1), C.R.S.

---

[6] Section 18-3-402(1), C.R.S. 1973 (1976 Supp.; current version in 1978 Repl. Vol. 8):
"Any actor who inflicts sexual penetration on a victim commits a sexual assault in the first degree if:
"(a) The actor causes submission of the victim through the actual application of physical force or physical violence . . . ."

1973 (current version in 1978 Repl. Vol. 8),[7] the statutes under which the defendant was convicted, indicates that "each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed.306, 309 (1932). Therefore, the merger doctrine does not apply in this case. In order to determine whether the defendant's conduct in the instant case constituted kidnapping, it is necessary to consider the appropriate construction of the statute and the sufficiency of the evidence to satisfy the statutory standards.

Section 18-3-301(1)(a), C.R.S. 1973 (now in 1978 Repl. Vol. 8), defines first-degree kidnapping:

"(1) Any person who does any of the following acts with the intent thereby to force the victim or any other person to make any concession or give up anything of value in order to secure a release of a person under the offender's actual or apparent control commits first-degree kidnapping:

"(a) Forcibly seizes and carries any person from one place to another."[8]

The People argue that both the victim's conduct incident to the sexual assault and the victim's conduct incident to the robbery here were concessions towards which the intent required under the statute to sustain a first-degree kidnapping conviction was directed, and that the movement around the school playground incidental to the assault and robbery was sufficient asportation to meet the statutory requirement of carrying a person from one place to another. We first consider whether the circumstances of the sexual assault establish the intent to force a concession in order to secure the release of the victim.[9] We then consider whether the circumstances of the robbery establish the intent to force a concession or the giving up of a thing of value in order to secure the release of the victim.

### A. *Sexual Assault*

Colorado's first-degree kidnapping statute was amended in 1965. The language originally suggested by the Legislative Council study preceding the revision of the statute made clear that the revision was intended to apply to ransom and extortion situations. Colorado Legislative Council, *Research Publication No. 98, Report to the Colorado General Assembly: Preliminary Revision of Colorado Criminal Laws*, 18-20 (1964). The proposed language parallelled that of other state laws which

---

[7] Section 18-4-301(1), C.R.S. 1973 (current version in 1978 Repl. Vol. 8): "A person who takes anything of value from the person or presence of another by the use of force, threats, or intimidation commits robbery."

[8] Compare Model Penal Code section 212.1 (Tent. Draft No. 11, 1960):
"A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business, or a substantial distance from the vicinity where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following purposes: (a) to hold for ransom or reward for release, or as shield or hostage; or (b) to facilitate commission of any felony or flight thereafter; or (c) to commit bodily injury or to terrorize the victim or another; or (d) to interfere with the performance of any governmental or political function."

[9] *See also People v. Naranjo,* _____ Colo. _____, 612 P.2d 1099 (1980), and *People v. Naranjo,* _____ Colo. _____, 612 P.2d 1106 (1980).

are unquestionably ransom and extortion statutes. *See, e.g.*, Ala. Code tit. 13, sec. 1-24 (1975; current version at tit. 13A, sec. 6-43, 1977 Supp.); Okla. Stat. Ann. tit. 21, sec. 745 (West, 1958); R.I. Gen. Laws sec. 11-26-2 (1969); Vt. Stat. Ann. tit. 13, sec. 2403 (1973). When the General Assembly adopted the proposal, the words "to make any concession[10] or" were inserted before the words "to give up anything of value." Section 18-3-301(1)(a), C.R.S. 1973 (now in 1978 Repl. Vol. 8), *supra*. Therefore, we face the problem of interpreting the term "concession" in a statute broader than the typical ransom statute.

The only Colorado case interpreting the word "concession" is *People v. Molina,* 41 Colo. App. 128, 584 P.2d 634 (1978). There, the Court of Appeals, in a case involving a conviction for first-degree kidnapping and first-degree sexual assault, read "any concession" as "sufficiently broad to encompass submission to a sexual assault." 41 Colo. App. at 129, 584 P.2d at 635. *Molina* suggests that proof of the victim's submission to a sexual assault is sufficient per se to establish the concession required for first-degree kidnapping. To the extent required by our holding here, we overrule such a broad reading of "any concession."[11]

In this case, Bridges was convicted of first-degree sexual assault under section 18-3-402(1), C.R.S. 1973 (1976 Supp.; current version in 1978 Repl. Vol. 8):

"(1) Any actor who inflicts sexual penetration on a victim commits a sexual assault in the first degree if:

(a) The actor causes submission of the victim through the actual application of physical force or physical violence . . . ."

The facts in the record fit subsection (1)(a) of the statute. The victim's forced submission was the result of physical force or violence and not of any concession. The victim had no choice in the matter. The assault ended when the police arrived. We find the evidence did not support the conclusion that the victim made or that the defendant intended to obtain a concession under the first-degree kidnapping provisions in section 18-3-301(1)(a), C.R.S. 1973 (now in 1978 Repl. Vol. 8).

### B. *Robbery*

The People also argue that the robbery in this case sustained a charge of first-degree kidnapping because taking the victim's possessions was a

---

[10] The word "concession" was retained from the earlier statute, section 40-2-44, C.R.S. 1963: "A person shall be guilty of kidnapping who willfully: . . . seizes . . . any person . . . for the purpose of extorting ransom or money or other valuable thing or concession . . . ."

[11] However, *Molina* can be distinguished from the instant case. The Court of Appeals found that the record in *Molina* amply demonstrated that "the defendant warranted, and the victim perceived, that her freedom was dependent upon her submission to the sexual assault." 41 Colo. App. at 129, 584 P.2d at 635. No similar warranties or perceptions appear in the record here.

concession within the meaning of the statute.[12] An essential element of first-degree kidnapping is the intent of the perpetrator to force the victim to give up anything of value in order to secure release of a person under the perpetrator's control. In the instant case, the victim testified she thought the defendant might release her if she gave him all of her money. But there is no indication in the record that the defendant intended to release the victim after he took her knapsack containing her wallet. In fact, he did not release her until the police arrived. The evidence shows only an intent to commit robbery, not an intent to force the victim to make a concession or give up something of value in order to secure her release. Section 18-4-301(1), C.R.S. 1973 (current version in 1978 Repl. Vol. 8).

Some states[13] in first-degree or aggravated kidnapping cases have avoided the problem of proving the subjective intent to kidnap when the victim is forced to give up a thing of value by defining aggravated kidnapping as an intent to commit robbery or to gain a reward combined with movement sufficient for simple kidnapping. The courts in California[14] and New York[15] have further restricted aggravated kidnapping to those situations where the movement is more than merely incidental to the commission of the underlying or lesser crime. This reflects a policy determination that the movement is sufficient to establish the intent necessary for the more severe charge as a matter of law.

The language in our first-degree kidnapping statute is difficult to apply in situations where a robbery involves some movement that is incidental to the commission of the robbery. Proof of an intent to force the giving up of a thing of value is only sufficient to support a conviction for robbery. For first-degree kidnapping, the prosecution must prove, in addition to movement, that the *intent* of the defendant is to force the victim to make a concession or give up a thing of value *in order to secure release.* Circumstantial evidence of such intent may be derived from an

---

[12] For this proposition the People cite *People v. McGill,* 190 Colo. 443, 548 P.2d 600 (1976). There, the injured defendant, attempting to escape from a hold-up, commandeered a car. The defendant held a gun to the driver's head until they reached the defendant's destination, some distance from the scene of the crime. The defendant was convicted of second-degree kidnapping, and on appeal, he questioned the sufficiency of the evidence of first-degree kidnapping. He argued that submission of the first-degree kidnapping charge to the jury unduly prejudiced him to the extent he should have a new trial on second-degree kidnapping. We disagreed, stating that there was enough evidence, *albeit slight,* to submit the question of first-degree kidnapping to the jury. To the extent that the language in *McGill* is inconsistent with our holding here, we disapprove that language.

[13] *See, e.g.,* Cal. Pen. Code, section 209 (West, 1979 Supp.).

[14] *People v. Daniels, supra.*

[15] *People v. Levy, supra.* The New York statute in *Levy,* unlike the California statute in *Daniels,* did not tie aggravated kidnapping to the commission of an underlying crime. The New York statute provided that one who "'confines' another with the intent to 'cause him . . . to be confined' against his will is guilty of kidnapping." [Penal Law, section 1250, former subd. (1) (McKinney's, 1909; current version at N.Y. Penal Law section 135.20; McKinney, 1975).] *See also People v. Lombardi, supra; People v. Miles, supra; People v. Cassidy, supra.*

examination of the amount and character of the movement surrounding the robbery, taking into account, for example, the time of detention, the distance, any changed environmental factors, whether the commission of the underlying crime and the movement were simultaneous, and the consistency of the defendant's actions with an independent intent to kidnap.

Here, if the underlying crime of robbery is considered an indication of the intent to force the victim to give up something of value in exchange for release, the charge becomes similar to one under California's aggravated kidnapping statute, and the analysis of the California cases can provide a means to determine if the requisite intent has been shown. The movement involved in the underlying crime should be analyzed to determine if it is simply "incidental" to that crime or if it is sufficient to establish a separate kidnapping charge.

To determine when kidnapping has occurred independently of another crime, the California and New York courts have adopted a two-pronged test.[16] The first consideration is whether the movement of the victim would "substantially increase the risk of harm over and above that necessarily present in the crime . . . itself." *Daniels, supra,* 459 P.2d at 238, 80 Cal. Reptr. at 910.[17] Here we have no evidence to support a finding of a substantial increase in the risk of harm. Although Bridges moved the victim to various places on the school grounds, there is no basis upon which the jury could find that these movements substantially increased the risk of harm to which the victim was already subjected.

The second prong of the test is whether the movement was "incidental to the commission of the crime" or "substantial in nature."[18] In the case before us, the movement of the victim had no other purpose or effect beyond robbery and sexual assault. This conclusion is supported by the circumstances surrounding the incident: the brief time of detention, movement for short distances only, unchanged environmental factors, simultanious crimes and movement, and the fact that the defendant's actions were consistent with no independent intent to kidnap the victim. The incidental movement test is appropriate here. *People v. Daniels, supra;*

---

[16] *See also People v. Adams, supra,* and *Wright v. State, supra.*

[17] *Cf. Yescas v. People,* 197 Colo. 379, 593 P.2d 358 (1979), where we held that the movement of the victim from a place of public view to an area of seclusion in darkness justified a conviction for both sexual assault and second-degree kidnapping. *See also People v. Cardwell,* 181 Colo. 421, 510 P.2d 317 (1973).

[18] We avoided the "incidental" movement test in *Yescas, supra,* where the defendant was convicted of first-degree sexual assault and second-degree kidnapping. Because the conviction was for second-degree kidnapping, only movement of the victim from one place to another was required. *See People v. Caudillo,* 21 Cal. 3d 562, 580 P.2d 274 (1978); *People v. Stanworth,* 11 Cal.3d 588, 522 P.2d 1058 (1974); However, the same movement that is incidental to the sexual assault may be sufficient to supply the necessary asportation for second-degree kidnapping. *See People v. Stender,* 47 Cal.App.3d 413, 121 Cal.Rptr. 334 (1975); *People v. Hunter,* 19 Cal.App.3d 336, 97 Cal.Rptr. 29 (1971); *People v. Mays,* 17 Cal.App.3d 641, 95 Cal.Rptr. 190 (1971).

*People v. Levy, supra; People v. Adams, supra; Wright v. State, supra.* Movement which is more than incidental to the commission of the underlying crime is circumstantial evidence of specific intent to kidnap for the factfinder, and a jury could be so instructed. The evidence did not sustain "asportation," other than that incidental to the underlying charge of robbery, sufficient for first-degree kidnapping under section 18-3-301(1)(a).

## II.

The defendant's remaining allegation of error is addressed briefly. He contends that the lack of a *mens rea* element in the sexual assault statute [section 18-3-402, C.R.S. 1973 (1976 Supp.; current version in 1978 Repl. Vol. 8)] and the robbery statute [section 18-4-301, C.R.S. 1973 (1976 Supp.; current version in 1978 Repl. Vol. 8)] violates due process and that it was fundamental error for the trial court to omit a *mens rea* element from the jury instructions on first-degree sexual assault and robbery.

■ Legislative silence on the element of intent in a criminal statute is generally not construed as an indication that no culpable mental state is required. In fact, the United States Supreme Court in construing federal legislation has held that the basic definition of a crime usually requires the conjunction of an act and a culpable mental state. *United States v. United States Gypsum Co.,* 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978); *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed.288 (1952). This required mental state may be implied from the statute. *Cf. United States Gypsum, supra; Morissette, supra; State v. Berry,* 101 Ariz. 310, 419 P.2d 337 (1966); *People v. Washburn,* 197 Colo. 419, 593 P.2d 962 (1979). Moreover, as the United States Supreme Court held in *Morissette,* the mental state is a question of fact which must be presented to the jury. *See also People v. Washburn, supra.*

■ The trial court did instruct the jury that a culpable mental state was an essential element of a crime requiring a finding that the defendant's acts were intentional. *Colorado Jury Instructions (Criminal)* 6:1. The instruction was sufficient to avoid fundamental error in the jury's verdict.

We affirm the judgment of the trial court on first-degree sexual assault and robbery, and we reverse the judgment of the trial court on first-degree kidnapping.

JUSTICE ROVIRA concurs in part and dissents in part.

JUSTICE ROVIRA concurring in part and dissenting in part:

I concur in part and dissent in part for the reasons set forth in *People v. Naranjo,* _____Colo. _____, 612 P.2d 1099 (1980).