The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Alvin POWELL, Defendant-Appellant.

No. 84SA510.

Supreme Court of Colorado, En Banc.

March 31, 1986.

Rehearing Denied May 5, 1986.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Peter J. Stapp and Cynthia Nimerichter, Asst. Attys. Gen., Denver, for plaintiff-appellee.

Steven R. Polidori, Fogel, Keating and Wagner, P.C. and Lee J. Belstock, Denver, for defendant-appellant.

DUBOFSKY, Justice.

The defendant Alvin Powell appeals his conviction, after a jury trial in Denver District Court, of first degree sexual assault with a weapon,[1] second degree kidnapping involving a sexual assault,[2] and a crime of violence.[3] He challenges these convictions on the grounds that the jury instructions and findings were inadequate, the evidence was insufficient to support his convictions, and the second degree kidnapping statute is unconstitutional.[4] The defendant also challenges the enhanced sentences imposed for the convictions on the basis that they violate equal protection, due process and double jeopardy. Although we agree with a portion of the defendant's argument that certain language in the second degree kidnapping statute is unconstitutional, we affirm his convictions and sentences.

---

1. § 18–3–402(2)(c), 8 C.R.S. (1978).

2. § 18–3–302(3)(a), 8 C.R.S. (1985 Supp.).

3. § 16–11–309, 8 C.R.S. (1985 Supp.).

4. Because the defendant challenges the constitutionality of the kidnapping statute and the statutory scheme that mandates a sentence in the range of more than 12 but not more than 24 years, this court has jurisdiction to consider this appeal under section 13–4–102(1)(b), 6 C.R.S. (1973 and 1985 Supp.).

Early in the morning of June 23, 1982, the victim and her boyfriend drove to a secluded area near the airport and engaged in sexual intercourse in the back seat of the boyfriend's car. As the couple began to get dressed, a police car pulled up behind the car. The defendant, a Denver police officer, rapped on the top of the boyfriend's car, shone a flashlight in the back seat, and demanded identification. The defendant informed the victim and her boyfriend that he intended to arrest them for indecent exposure. After speaking separately with the victim and the boyfriend and receiving an identification clearance for both of them from the police department computers, the defendant decided not to arrest them. He told the boyfriend to drive himself home and said that he would drive the victim home. Both the victim and the boyfriend testified at trial that they were frightened and thought something was suspicious about the defendant's offer to drive the victim home.

The victim got into the police car, and the defendant handcuffed her before they drove off. After they had driven several blocks the defendant removed the handcuffs, telling the victim that he would shoot her if she attempted to run away. At about the same time, the defendant noticed the boyfriend's car following the police car. The defendant stopped his car, spoke with the boyfriend, and the boyfriend drove off.

The defendant drove in a direction opposite that of the victim's home, explaining that he needed to check his patrol area. During the drive the victim and the defendant talked about the job of a police officer. When the victim mentioned that a friend of hers had shot herself, the defendant responded by describing in a graphic manner what would happen if he were to shoot her in various parts of her body.

Eventually, the defendant drove the victim to a deserted area near a lake. He stopped the car, put his arm around the victim and began kissing her. The victim testified that she tried to pull away from the defendant but that she was unable to do so because the defendant was holding her by the arm. She also testified that she was too frightened to resist in any other way. After removing his gun, patting it, and placing it within reach on the back seat, the defendant undressed her and removed his own clothes. He pulled the victim to him by the shoulders, and, in the words of the victim, "forced [her] head down on to his lap and put his penis in [her] mouth." Thereafter, according to the victim, the defendant pulled her by the shoulders and twisted her onto his lap where he had sexual intercourse with her. The victim then informed the defendant that it was late and that she had to be at work at six o'clock in the morning. The defendant dressed and drove her home. The victim told her parents about what had happened to her, and shortly thereafter they called the police department to report the assault.

A jury found the defendant guilty of first degree sexual assault, second degree kidnapping, and crime of violence with respect to the sexual assault charge. The district court sentenced him to two concurrent terms of 13 years.

## I.

The defendant was convicted of first degree sexual assault under section 18–3–402, 8 C.R.S. (1973), which provides in part that

(1) Any actor who knowingly inflicts sexual penetration on a victim commits a sexual assault in the first degree if:

(a) the actor causes submission of the victim through the actual application of physical force or physical violence....

(2) Sexual assault in the first degree is a class 3 felony, but it is a class 2 felony if:

...

(c) the actor is armed with a deadly weapon and uses the deadly weapon to cause submission of the victim.

The defendant contends that the district court erred in failing to instruct the jury on the meaning of the word "force" and also that there was insufficient evidence either of the use of force or the use of a deadly weapon to support his conviction under section 18–3–402(2)(c).

The court of appeals in *People v. Johnson,* 671 P.2d 1017 (Colo.App.1983), held that it is not error for a trial court to fail to provide the jury with a definition of the term "force" as used in the sexual assault statute. We agree. Where, as here, a jury properly is instructed that force is an element of the crime of first degree sexual assault, there is no reason to require a further instruction on the commonly-used word "force." *Cf. People v. Gross,* 670 P.2d 799 (Colo.1983); *People v. Cardwell,* 181 Colo. 421, 510 P.2d 317 (1973).

The defendant's allegation of insufficient evidence to support his conviction of first degree sexual assault requires us to determine whether, when viewed in the light most favorable to the prosecution, the evidence is substantial and sufficient to support the conclusion by a reasonable mind that the defendant is guilty of the offense charged beyond a reasonable doubt. *People v. Gonzales,* 666 P.2d 123 (Colo.1983); *People v. Bennett,* 183 Colo. 125, 515 P.2d 466 (1973). Here the evidence upon which the jury could have based a decision that the defendant used physical force against the victim was her testimony to the following: that she tried to pull away from the defendant but was prevented from doing so because he was holding her by the arm; that the defendant pulled her to him by the shoulders and "forced" her head to his lap; and that he pulled her by the shoulders and twisted her over his lap in order to engage in intercourse. This evidence was sufficient to permit the jury to conclude beyond a reasonable doubt that the submission of the victim to the sexual assault was caused by the application of physical force on the part of the defendant within the meaning of section 18–3–402(1)(a).

There was also sufficient evidence for the jury to find beyond a reasonable doubt that the defendant used a deadly weapon to cause the victim's submission to the assault. The defendant argues that mere possession of a weapon does not constitute use of the weapon under the sexual assault statute. We need not address this contention because the evidence pertaining to his gun involved more than its mere possession. The defendant told the victim that if she attempted to run away he would shoot her. He described what would happen to her if he shot her in various parts of her body. Before committing the sexual assault, the defendant took off the gun, patted it and put it within reach on the back seat. Under these circumstances the jury reasonably could have concluded that the defendant was armed with a deadly weapon and used the weapon to cause the victim's submission.

## II.

### A.

The defendant next asserts that his conviction of second degree kidnapping under section 18–3–302, 8 C.R.S. (1985 Supp.), must be reversed because the statute is unconstitutionally vague and overbroad. As we stated in *People v. Allen,* 657 P.2d 447, 449 (Colo.1983),

A penal statute is unconstitutionally vague if it "forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess as to its meaning and differ as to its application." *Connally v. General Construction Co.,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); *People v. Jennings,* 641 P.2d 276 (Colo.1982). Criminal statutes should be framed with clarity sufficient to inform the persons subject to them of the standards of conduct imposed and to give fair warning of which acts are forbidden. *Id.* This is not to say, however, that due process of law requires mathematical exactitude in legislative draftsmanship. We have recognized that while the statute must be sufficiently specific to give fair warning of the proscribed conduct, it also must remain "sufficiently general to address the essential problem under varied circumstances and during changing times." *Colorado Auto and Truck Wreckers v. Department of Revenue,* 618 P.2d 646,

651 (Colo.1980). Due process of law is satisfied as long as the statutory terms "are sufficiently clear to persons of ordinary intelligence to afford a practical guide for law-abiding behavior and are capable of application in an evenhanded manner by those responsible for enforcing the law." *People v. Castro*, 657 P.2d 932 at 939 (1983), slip op. at 11–12, quoting *People ex rel. City of Arvada v. Nissen*, 650 P.2d 547, 551 (Colo.1982); *see also, e.g., People v. McKnight*, 626 P.2d 678 (Colo.1981); *People v. Latsis*, 195 Colo. 411, 578 P.2d 1055 (1978); *People v. Albo*, 195 Colo. 102, 575 P.2d 427 (1978).

Because we resolve the defendant's contention under the vagueness doctrine, we need not address his claim that the statute is overbroad, which is based on the same argument as his vagueness claim.

■ Section 18–3–302 provides in relevant part: "(1) Any person who knowingly, forcibly, or otherwise seizes and carries any person from one place to another, without his consent and without lawful justification, commits second degree kidnapping." Kidnapping is an offense that originated in the common law, *see Wharton's Criminal Law*, § 210 (14th Ed.1979), and thus the constitutional guarantees of due process require a culpable mental state or *mens rea* as an element of an offense. *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952); *People v. Wilhelm*, 676 P.2d 702 (Colo.1984); *People v. Mascarenas*, 666 P.2d 101 (Colo.1983); *Bollier v. People*, 635 P.2d 543 (Colo.1981). As the defendant correctly observes, the statute at issue here fails to indicate that the mental state of "knowingly" is a separate element of the offense. By using the terms "knowingly," "forcibly," or "otherwise" in the disjunctive or alternative, the statute may include within its coverage acts that are accomplished by "force" or "otherwise" but not necessarily "knowingly." It is unclear which alternative of the ways of seizing and carrying away constitutes second degree kidnapping. The statute runs afoul of the dictates of *Morissette, Wilhelm*, and related cases and is unconsti-

tutionally vague because persons of ordinary intelligence "must necessarily guess as to its meaning and differ as to its application." *People v. Allen*, 657 P.2d at 447.

■ However, the fact that a statute may be constitutionally infirm in some respects does not result in automatic invalidation of the entire statute. To the contrary, we have long adhered to the principle that where only part of a legislative act is unconstitutional, the remainder will be upheld if it is capable of being separated from the invalid part and enforced on its own. *See, e.g., Reams v. City of Grand Junction*, 676 P.2d 1189 (Colo.1984); *People v. Morgan*, 79 Colo. 504, 246 P. 1024 (1926); *Newman v. People*, 23 Colo. 300, 47 P. 278 (1896); *People ex rel. Tucker v. Rucker*, 5 Colo. 455 (1880). This principle is codified in section 2–4–204, 1B C.R.S. (1980), which provides:

> If any provision of a statute is found by a court of competent jurisdiction to be unconstitutional, the remaining provisions of the statute are valid, unless it appears to the court that the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one; or unless the court determines that the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

Under this doctrine, single words or phrases may be severed. *Shroyer v. Sokol*, 191 Colo. 32, 550 P.2d 309 (1976); *cf. Reams*, 676 P.2d at 1195–1196.

■ In applying the principle embodied in section 2–4–204 to the second degree kidnapping statute, we first must determine whether the part of the statute that proscribes "knowingly" seizing and carrying away may be sustained, and second, whether the "forcibly or otherwise" language must be excised. First, when a statute may be interpreted in more than one way, the interpretation which renders the

statute constitutional must be adopted. *People v. Washburn,* 197 Colo. 419, 593 P.2d 962 (1979). Therefore, because a culpable mental state is required as an element of an offense, we conclude that "knowingly"—although part of a vague section of the statute—should be retained. The second question is whether to excise "forcibly or otherwise." The phrase "or otherwise" can be read to modify only the word "forcibly," in effect canceling any meaning for "forcibly." Under this interpretation, the statute does not require that the prohibited conduct be done "forcibly." Of course, the statute in its entirety—where the seizing and carrying away was done knowingly, or forcibly, or otherwise—does not require that the prohibited conduct be done "forcibly" as long as it was done knowingly or otherwise. We might excise the phrase "or otherwise" and imply the word "and" before "forcibly," thus retaining both "knowingly" and "forcibly" as elements of second degree kidnapping. The difficulty with utilizing an approach to the statute that retains "forcibly"—in contrast with retaining "knowingly"—is that there is neither a constitutional requirement that "forcibly" be an element of the crime nor any indication of legislative intent that "forcibly" must be an element of second degree kidnapping.[5] Therefore, we conclude that excising the phrase "forcibly or otherwise" leaves the remainder of the second degree kidnapping statute as a complete and constitutional whole in accord with legislative intent.

■ Despite our excision of several words from the statute, we uphold the defendant's conviction of second degree kidnapping in this case because the jury was instructed that a guilty verdict on the kidnapping charge could only be based on proof beyond a reasonable doubt that the defendant knowingly seized and carried away the victim. Instruction No. 18 provided:

A person commits the crime of Second Degree Kidnapping if:

He knowingly *and* forcibly or otherwise seizes and carries any person from one place to another without her consent and without lawful justification.

The elements of Kidnapping in the Second Degree are therefore:

(1) Knowingly

(2) Forcibly or otherwise

(3) Seizing and carrying any person from one place to another

(4) Without her consent, and

(5) Without lawful justification.

If, after considering all of the evidence, you find that the prosecution has established beyond a reasonable doubt that the defendant, ALVIN POWELL, acted in such a manner so as to satisfy all of the above elements at or about the date and place stated in the information, you should find the defendant Guilty of Second Degree Kidnapping; if you do not so find, you should find the defendant Not Guilty of Second Degree Kidnapping. [Emphasis added.]

The district court fashioned this instruction to avoid the possibility that "otherwise" might apply to "knowingly." The court determined that Instruction 18 cured any constitutional problem with the statute being applied in a manner that did not include a culpable mental state. *See Chambers v. People,* 682 P.2d 1173 (Colo.1984).

■ The remaining question is whether that portion of the jury instruction that permitted the jury to base a guilty verdict on a finding that the seizing and carrying away was committed "forcibly or otherwise," when we have excised that language from the statute, is permissible. To the extent that the instruction might have conveyed the impression that the prosecution was required to prove that the defendant forcibly seized and carried away the victim, any error inured to the benefit of the defendant and cannot be the basis for a re-

---

**5.** The phrase "seizes and carries away" can be read to imply the use of force; however, to the degree the phrase is read to imply the use of force to accomplish second degree kidnapping, the word "forcibly" is redundant.

versal of his conviction. *See People v. Hart*, 658 P.2d 857 (Colo.1983).

### B.

The defendant further assails section 18–3–302 on the ground that the statute proscribes a seizure and carrying away of a victim that is merely incidental to the commission of another offense. In *People v. Bridges*, 199 Colo. 520, 528, 612 P.2d 1110, 1116–17 (1980), we invalidated a conviction of first degree kidnapping where the evidence showed that "the movement of the victim had no other purpose or effect beyond robbery and sexual assault." However, the holding in *Bridges* was dictated by the peculiar language of the first degree kidnapping statute. We noted in that opinion that the "incidental detention" test applies only to cases involving charges of first degree kidnapping and referred to *Yescas v. People*, 197 Colo. 379, 593 P.2d 358 (1979), in holding that where a conviction is "for second degree kidnapping, only movement of the victim from one place to another was required." 199 Colo. at 528 n. 18, 612 P.2d at 1116 n. 18.[6]

■ The *Yescas* holding was reiterated in *People v. Abbott*, 690 P.2d 1263 (Colo. 1984) and most recently in *Apodaca v. People*, 712 P.2d 467 (Colo.1985). In *Apodaca*, 712 P.2d at 475, we decided that the statutory requirement of movement of the victim from one place to another "is clearly satisfied when the movement itself ... results in a demonstrable increase in risk of harm to the victim." Here, the defendant's movement of the victim from the boyfriend's car to his patrol car and his driving away with her demonstrably increased the risk of harm to the victim and therefore qualifies as conduct within the second degree kidnapping statute. *Cf. Apodaca*, 712 P.2d at 475 (defendant's forcible movement of victim at knife-point from public sidewalk to inside of truck cab and subsequent movement of the truck a short distance before victim escaped constituted the type of movement prohibited by section 18–3–302).

### III.

The defendant was convicted under the portion of the second degree kidnapping statute providing that the offense is a class 2 felony if the person kidnapped is a victim of sexual assault. Section 18–3–302(3)(a), 8 C.R.S. (1985 Supp.).[7] The defendant argues that the jury was not instructed properly on the burden of proof concerning whether the victim of the kidnapping was sexually assaulted.

■ The defendant is correct in assuming that, whether sexual assault is considered an element of the crime of kidnapping or whether it is viewed as a sentence enhancer, a conviction under section 18–3–302(3)(a) must be based on proof beyond a reasonable doubt of the sexual assault. *Cf. Beigel v. People*, 683 P.2d 1188 (Colo. 1984); *Ramirez v. People*, 682 P.2d 1181 (Colo.1984). In *Beigel*, we reversed the

---

**6.** The first degree kidnapping statute, section 18–3–301, 8 C.R.S. (1978) declares in part:

(1) Any person who does any of the following acts with the intent thereby to force the victim or any other person to make any concession or give up anything of value in order to secure a release of a person under the offender's actual or apparent control commits first degree kidnapping:

(a) forcibly seizes and carries any person from one place to another.

As the discussion in *Bridges* indicates, evidence that movement of the victim was merely incidental to the commission of another crime is relevant because such evidence negates the specific intent to kidnap required by the first degree kidnapping statute. Because the second degree kidnapping statute does not incorporate

an element of specific intent, the fact that movement of the victim might have been incidental to another crime is irrelevant.

**7.** Section 18–3–302, adopted by the General Assembly in 1981 after the decision in *People v. Bridges*, 199 Colo. 520, 612 P.2d 1110 (1980), provides in relevant part:

(1) Any person who knowingly, forcibly, or otherwise seizes and carries any person from one place to another, without his consent, and without lawful justification, commits second degree kidnapping....

(3) Second degree kidnapping by any person under subsection (1) or (2) of this section is a class 2 felony if the person kidnapped:

(a) Is a victim of a sexual assault....

defendant's conviction for first degree sexual assault as a class 2 felony under section 18–3–402(2)(a), 8 C.R.S. (1978), on the ground that the jury had not been properly advised of the burden of proof with respect to the factor that in the commission of the sexual assault the actor was physically aided or abetted by one or more other persons, which raised the offense from a class 3 to a class 2 felony. We observed that the physically aided or abetted factor was not included in the instruction that indicated the elements of the crime of first degree assault. We also noted that the special verdict forms submitted to the jury did not indicate the burden of proof to be applied to the factor.

In this case the jury was not instructed that sexual assault was an element of second degree kidnapping under section 18–3–302(3)(a). However, the jury was instructed on the meaning of proof beyond a reasonable doubt, and one of the findings prepared by the court and signed by the jury stated that "We the jury find, beyond a reasonable doubt, that the person Kidnapped ... was subjected to Sexual Assault by the defendant." While it might have been better practice to include in an instruction the sexual assault factor as an element of the kidnapping offense with which the defendant was charged,[8] the jury was informed adequately about the burden of proof necessary to obtain a guilty verdict of second degree kidnapping including a sexual assault. *Cf. Ramirez v. People.*

### IV.

The defendant was convicted of a crime of violence under section 16–11–309, 8 C.R.S. (1985 Supp.). This statute defines a crime of violence to include "a crime in which the defendant used, or possessed and threatened the use of, a deadly weapon during the commission of ... sexual assault." § 16–11–309(2)(a)(I). The crime of violence statute is a sentencing provision: a conviction under the statute requires a judge to impose a sentence in accordance with section 18–1–105(9)(a)(I), 8 C.R.S. (1985) "to a term greater than the maximum in the presumptive range, but not more than twice the maximum term authorized for the punishment" of the underlying offense, in this case more than 12 years but not more than 24 years for first degree sexual assault.

The defendant contends that because the use of a deadly weapon raises first degree sexual assault from a class 3 to a class 2 felony under section 18–3–402(2)(c), 8 C.R.S. (1978), basing a conviction of a crime of violence and a sentence in the aggravated range on the same factor violates state and federal constitutional guarantees of equal protection and due process as well as state and federal constitutional prohibitions against double jeopardy. This is the argument that we recently rejected in *People v. Haymaker*, 716 P.2d 110 (Colo.1986), and on the basis of that opinion, we uphold the defendant's sentence to a term of 13 years for first degree sexual assault.

The defendant advances a related constitutional argument in connection with his sentence of 13 years for second degree kidnapping. The second degree kidnapping statute provides that the offense is either a class 3 or a class 4 felony, depending on the circumstances, unless the person kidnapped was the victim of a sexual assault, in which case the crime is a class 2 felony.[9] The defendant's position is that when a person is convicted of sexual assault, it is impermissible under the state and federal constitutions to increase the offense of kidnapping to a class 2 felony on the basis of the sexual assault conviction.

This position is a variation of the issue resolved in *People v. Haymaker*. Here, the defendant's sentence for an offense is enhanced not on the basis of an element of the same offense but rather by virtue of conviction for a separate offense. However, the reasoning in *Haymaker* is applicable to the question of the constitu-

---

**8.** *See* C.J.I.Crim. 11.05.

**9.** See footnote 7, supra, for text of statute.

tionality of section 18–3–302(3)(a). A *conviction* of second degree kidnapping does not depend on the sexual assault factor. Thus it cannot be said that a defendant convicted of sexual assault and second degree kidnapping under section 18–3–302(3) is subjected to unconstitutional "double punishment" in the sense of being convicted of two substantive offenses for the same conduct. The sexual assault factor under section 18–3–302(3) is a sentence enhancement factor, and where, as here, the intent of the legislature clearly authorizes conviction of second degree kidnapping as a class 2 felony on the basis of a related conviction for sexual assault, the kidnapping conviction must be upheld.

### V.

■ The defendant argues that his sentence imposed under the violent crime statute, section 16–11–309, 8 C.R.S. (1985 Supp.), is unsupported by the requisite specific finding regarding the use of a deadly weapon. Section 16–11–309(5) mandates that where a defendant is charged with a crime of violence

> the jury, or the court, if no jury trial is had ... shall make a specific finding as to whether the accused did or did not use, or possessed and threatened to use, a deadly weapon during the commission of such crime.... If the jury or court finds that the accused used, or possessed and threatened the use of, such deadly weapon ... the penalty provisions of this section shall be applicable.

One of the verdict forms submitted to the jury read as follows:

> * I. We the jury, have a reasonable doubt that the defendant, ALVIN POWELL, did use, or possess and threaten the use of, a deadly weapon during the commission of either the crime of first

degree sexual assault with a weapon, first degree sexual assault without a weapon, second degree sexual assault, or second degree kidnapping.

Foreperson _____

> * II. We the jury, find beyond a reasonable doubt, that the defendant, ALVIN POWELL, did use, or possess and threaten the use of, a deadly weapon during the commission of either the crime of first degree sexual assault with a weapon, first degree sexual assault without a weapon, second degree sexual assault or second degree kidnapping.

Foreperson _____

> * This finding to be signed only if the defendant is found GUILTY of one or more of the charges. The foreperson should sign *only one* of the above (I or II). If you find the defendant not guilty of all charges, *do not* sign this form.

On the form returned by the jury, the jury indicated that it found beyond a reasonable doubt that the defendant used, or possessed and threatened the use of, a deadly weapon during the commission of one of the substantive offenses with which he was charged. The only specific defects alleged by the defendant with respect to this finding are 1) that it does not specify whether it was based on use or on possession and threatened use of a deadly weapon and 2) that it does not isolate the particular offense that the jury believed involved a deadly weapon. However, in other verdict forms the jury found that the defendant used a deadly weapon in the commission of the sexual assault and that the defendant did not use a deadly weapon in the commission of the kidnapping. Taken together the jury's findings met the specificity requirement of the violent crime statute.[10] *Cf.*

**10.** Although the point was not raised by the defendant we note that the verdict form set out above required the jury to base a predicate finding for a conviction under the violent crime statute on proof beyond a reasonable doubt. In addition, as the People observe, the jury, in accordance with C.J.I.Crim. 12:04, was instructed that use of a deadly weapon is an element of first degree sexual assault with a weapon. The jury was further instructed that a guilty verdict could only be based on proof beyond a reasonable doubt of all the elements of the crime. Under these circumstances, we agree with the People that "[i]t must be assumed that the jury applied the reasonable doubt standard to the finding regarding use of a deadly weapon." *Cf.*

*Beigel v. People,* 683 P.2d 1188 (Colo.1984); *Ramirez v. People,* 682 P.2d 1181 (Colo. 1984).

## VI.

 Finally, the defendant contends that the jury's finding that he used a weapon during the first degree sexual assault is inconsistent with its finding that no weapon was involved in the kidnapping. The standard against which this argument is to be measured is the rule that

> jury verdicts will not be reversed for inconsistency when the "crimes charged required different elements of proof, and the jury could ... find from the very same evidence that the element of one crime was present while at the same time finding that the element of another charged crime was absent."

*People v. Morgan,* 637 P.2d 338, 344 (Colo. 1981), *quoting People v. Mayfield,* 184 Colo. 399, 403, 520 P.2d 748, 750 (1974).

From the testimony presented at trial the jury could have determined that the kidnapping was completed when the defendant handcuffed the victim and drove away with her in his car, before the use of the defendant's gun was involved to any extent. From the same evidence, the jury properly could have determined that the defendant's statement that he would shoot the victim if she tried to run away, his references to the effect of bullet wounds in various parts of the victim's body, and his patting the gun before placing it within reach on the back seat all took place after the kidnapping, as part of the sexual assault. Accordingly, the finding that the defendant used a weapon during the sexual assault is consistent with its finding that no weapon was involved in the kidnapping.

The judgment of the district court is affirmed.

*People v. Russo,* 677 P.2d 386 (Colo.App.1983), *rev'd on other grounds, People v. Russo,* 713 P.2d 356 (Colo.1986) (instructions and verdict forms inadequate where use of a deadly weapon not

included as element of substantive offense and jury not instructed that beyond a reasonable doubt standard applied to proof of such use).