[Crim. No. 7040. Fourth Dist., Div. Two. Apr. 8, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT C. STENDER, Defendant and Appellant.

414

**COUNSEL**

Harry J. Delizonna for Defendant and Appellant.

Evelle J. Younger, Attorney General, Conrad D. Peterman and Jay M. Bloom, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THE COURT.**\*—Defendant was found guilty, by jury, of burglary in the first degree (Pen. Code, § 459), rape (Pen. Code, § 261, subd. 3), kidnaping (Pen. Code, § 207) and attempted oral copulation (Pen. Code, § 288a). Imposition of sentence was suspended and three years probation granted. As a condition of probation defendant was to serve nine months in the county jail. A stay of execution on the jail sentence was granted to February 5, 1975.

## FACTS

In August 1973 Mrs. W., age 20, was staying with her mother in a residence on Balboa Island in Orange County. On August 11, 1973, at about 11 p.m. Mrs. W. was watching television in the living room while her mother slept in the bedroom. The front of the house consisted primarily of windows.

At about that time she observed defendant standing outside looking in the windows. At that point he walked away, but passed by two additional times. Mrs. W. then saw that he was standing in front of the house almost out of view. When she looked, he walked away. Mrs. W. locked the doors, resumed watching television and finally fell asleep on the couch.

She awoke about 2:30 a.m. to find defendant sitting by her side, holding both her arms and kissing her. He said "Hi" to her, continued to kiss her and told her she was beautiful, he needed her and wanted her. This course of conduct continued for about five minutes. After several minutes, or more, Mrs. W. became aware that a hunting knife with a four-inch blade was resting on her chest with the blade pointed toward her face. Defendant continued to hold both her arms.

Mrs. W. testified she almost screamed but was very scared and decided to not resist defendant in the hope she would not be harmed. At that point she did not know whether or not defendant had earlier discovered her mother and harmed her.

After the kissing session, defendant moved the knife to the coffee table, pulled up Mrs. W.'s T-shirt and began fondling her breasts. He

---

\*Before *Gardner, P. J., Kerrigan, J.,* and *Tamura, J.*

kept his right hand on her left arm. Mrs. W. wore levi shorts and a T-shirt. She did not have any underwear on.

Defendant then completely undressed Mrs. W. and then himself. He got on top of her, spread her legs, and rubbed her with his penis. Thereafter, he performed an act of sexual intercourse on her. Both then dressed.

At this point defendant learned upon inquiring of Mrs. W. that her mother was asleep in the house. Defendant announced they would take a walk. Placing the knife in his back pocket, defendant put his arm around Mrs. W. with a firm grip on her upper right arm and they left the house.

They walked past three houses, over a low seawall onto the beach, and across the beach to underneath a pier. The total distance from the house to the pier was estimated by Mrs. W. to be 200 feet.

Upon reaching the pier Mrs. W. was ordered to disrobe. After having done so, she laid on the sand and defendant fondled her breasts. He had removed his sweater. Defendant then lowered his pants and exposed his penis which he placed against her mouth. He rubbed his penis on her face but did not get it in her mouth because she kept it closed and moved her head from side to side.

Mrs. W. and defendant then dressed and while defendant was putting on his sweater Mrs. W. successfully fled to her home. She locked herself in and cried. She then took a shower and returned to the living room where she continued to cry. Her mother woke up to find her crying in the living room. After telling her mother what had occurred, her mother advised her not to call the police. Later that day Mrs. W. told her boyfriend[1] and a girlfriend what had happened. Both told her to call the police but she did not do so.

Three days later about midnight Mrs. W., who was then in her backyard, saw defendant walk by her house. She woke her boyfriend and they went to the local tavern to see if defendant might be there. Mrs. W. got the idea of looking there because she believed defendant may have been intoxicated at the time of commission of the crimes.

Defendant was at the bar. Mrs. W. called the police who shortly thereafter arrested defendant at the bar.

---

[1]Mrs. W.'s husband was then in Oklahoma. By the time of trial she had become divorced from him.

Defendant presented a version of the incident demonstrating consent. Defendant also presented evidence he was a 46-year-old corporate vice-president, West Point graduate, vacationing in the area with his wife and four children. A corporate attorney, a computer association president, and two corporate presidents testified that defendant was essentially a man of high conduct, nonviolent and extremely honest.

I

## SUFFICIENCY OF KIDNAPING EVIDENCE

■ Defendant contends the evidence of kidnaping was insufficient under the test formulated in *People* v. *Daniels,* 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677].[2] Our highest court has clarified in two recent cases that the *Daniels* test does not apply to Penal Code section 207 kidnaping (simple kidnaping). (*People* v. *Brown,* 11 Cal.3d 784, 787 [114 Cal.Rptr. 426, 523 P.2d 226]; *People* v. *Stanworth,* 11 Cal.3d 588, 596, 598-601 [114 Cal.Rptr. 250, 522 P.2d 1058].)

Thus the Supreme Court has said "that *Daniels* does not apply to the latter classification [simple kidnaping]." (*People* v. *Stanworth, supra,* at p. 596.) "We emphasize at the outset that the rule articulated by us in *People* v. *Daniels, supra,* 71 Cal.2d at page 1139 is not applicable to kidnaping charged as a violation of section 207 but only to charges of kidnaping for robbery bottomed on section 209, commonly referred to as aggravated kidnaping. Nor did we indicate in any way in *Daniels* that our rule was applicable to charges under section 207; if defendant's argument is intended as an invitation to extend the rule to all types of kidnaping, we decline to do so. [Fn. omitted.]" (*People* v. *Stanworth, supra,* at pp. 598-599.) "It is apparent, however, that the *Daniels* rule [fn. omitted] does not apply to a conviction of kidnaping under section 207." (*People* v. *Brown, supra,* at p. 787.)

Defendant has relied on *People* v. *Henderson,* 25 Cal.App.3d 371 [101 Cal.Rptr. 129], decided two years prior to *Brown* and *Stanworth,* wherein the court stated that "[t]he *Daniels-Timmons* analysis applies as well to a conviction of simple kidnaping (Pen. Code, § 207) where an underlying

---

[2]*Daniels* held that a judgment of conviction of kidnaping for the purpose of robbery under Penal Code section 209 (aggravated kidnaping) cannot stand where (1) the movements of the victim are merely incidental to commission of the robbery and (2) do not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself. (*At* p. 1139.)

crime is in fact proved." (At p. 376.)[3] The Supreme Court through *Brown* and *Stanworth* has abrogated the quoted language of *Henderson.*

We consider whether *Brown* and *Stanworth* intended to exclude from their analysis those simple kidnaping cases where other crimes were also involved, other than robbery. The Supreme Court language quoted above treats simple kidnaping as a whole and states no exception where there is simple kidnaping accompanied by some other crime. In fact, the language of *Stanworth* demonstrates that the Supreme Court was indeed aware of the accompanying crime problem: "In contrast, kidnaping, as defined by section 207, *may occur in the absence of another crime.* Thus where only simple kidnaping is involved, it is clear that the victim's movements cannot be evaluated in the light of a standard which makes reference to the commission of another crime." (Italics added.) (At p. 600.) Not only was this statement clearly made but *Stanworth* was a case in which the obviously invalid *Henderson* approach would have been considered and applied if the Supreme Court considered it vital.

Stanworth forced two of his victims (Susan Box and Caree Collison) from his vehicle at gunpoint to a hill a quarter of a mile away where he raped and murdered Susan and murdered Caree. The Supreme Court, without any consideration of the argument that the movement from car to hill was incidental to underlying crimes of murder and rape, concluded that the movement was substantial and thus the simple kidnaping convictions were proper. (At pp. 602-603.)

Stanworth also forced his way into the cars of Miss W. and Miss S. and forced each to drive to another location where he committed sexual acts. Again, without commenting on the obvious fact each movement was for the purpose of accomplishing a sexual crime, the court concluded the movements were not trivial but rather were substantial and affirmed the simple kidnaping convictions. (At pp. 603-604.)

A distinction must be made. What *Stanworth* very clearly rejected is the application of the *Daniels* test to simple kidnaping, whether there is a so-called underlying crime involved or not. However, *Stanworth* did not completely reject consideration of the existence of another crime to which the movement was incidental. Such movement would be a part of the consideration of whether the movement of the victim was substantial as contrasted with trivial. The test *is not* whether the movement may be

---

[3] *"Timmons"* refers to *People* v. *Timmons*, 4 Cal.3d 411 [93 Cal.Rptr. 736, 482 P.2d 648], a section 209 case which followed and clarified *Daniels.*

evaluated in reference to the commission of another crime but rather whether the existence of that other crime demonstrates that only the slightest of movements (insubstantial movements) were involved.

The confusion of the above distinction as well as its clarification derives from *Cotton* v. *Superior Court,* 56 Cal.2d 459 [15 Cal.Rptr. 65, 364 P.2d 241]. *Cotton* was a simple kidnaping case from which *Daniels* drew heavily. Consequently *Daniels* left an impression that its rule may be applied in simple kidnaping cases. *Cotton* added significant language to the first prong of the *Daniels* test. However, in *Stanworth* it was clarified that, despite *Cotton, Daniels* was not meant to apply to simple kidnaping.

In *Cotton* there was a riot which included dragging a person 15 feet and in other cases chasing people. A simple kidnaping conviction based upon these acts was reversed because the movements involved were merely incidental to the assaults that were occurring. *Stanworth,* in negating the concept that *Cotton* was authority that the first prong of *Daniels* applied to simple kidnaping, stated: "Coincidentally, *Cotton* did involve related charges of rioting and assault. Because the victim's movements were not substantial, we concluded that those movements were 'only incidental to the assault and rioting.' (*Cotton,* 56 Cal.2d at p. 464.) Nevertheless, the central thrust of *Cotton* is contained in our reasoning that the Legislature did not intend to apply criminal sanctions where the 'slightest movement' is involved. (*Cotton,* 56 Cal.2d at p. 465.)" (*People* v. *Stanworth, supra,* at p. 600.)

Witkin, relying on *People* v. *Williams,* 2 Cal.3d 894 [88 Cal.Rptr. 208, 471 P.2d 1008], concludes *Daniels* applies to simple kidnaping. (Witkin, Cal. Crimes (1973 Supp.) p. 182.) In *Stanworth* the court observes the Witkin interpretation noting that *Williams* is not authority for the stated proposition. Unhappily for the *Henderson* court, it too relied on *Williams* as authority for its conclusion.

Thus it appears that the existence of an underlying crime is not a relevant consideration in simple kidnaping except to the extent the existence of that other crime unequivocally demonstrates the trivial nature of the movement as in *Cotton.* Otherwise, the existence of another crime is not a relevant consideration as is manifestly demonstrated by *Stanworth.*

It is clear that the *Daniels* test does not apply in the instant case. The substance of defendant's argument herein concerns whether the two prongs of *Daniels,* and particularly the second one, were met. This contention is not relevant to defendant's simple kidnaping conviction.

There is some suggestion in defendant's brief that there is no evidence of force in the movement of the victim. The evidence establishes defendant kept a firm grip on the victim almost continuously throughout the movement and had the knife readily at hand in his back pocket. Only a most unreasonable construction of the facts could warrant the conclusion there was no force used. We find defendant's suggestion to be meritless.

■ Giving defendant the benefit of doubt concerning what issues are raised, we find that he contends the instant movement was not sufficient to support simple kidnaping under the rules pertinent thereto.

Section 207 "defines kidnaping in part as movement 'into another country, state, or county, or into another part of the same county.' [Fn. omitted.] The statutory language implies that the determining factor in the crime of kidnaping is the actual distance of the victim's movements; and further, that the minimum movements necessary for the commission of the crime are present where the victim is forcibly taken 'into *another part* of the same county.' . . . Finally, because the victim's movements must be more than slight (*Cotton,* 56 Cal.2d at p. 465) or 'trivial' (*People v. Rocco, supra,* 21 Cal.App.3d 96, 105 [98 Cal.Rptr. 365]), they must be substantial in character to constitute kidnaping under section 207." (*People* v. *Stanworth, supra,* at p. 601.)

"Where the movements of the victim are slight or insubstantial . . . they cannot constitute kidnaping." (*People* v. *Brown, supra,* at p. 788.) "[T]he 'determining factor in the crime of kidnaping [under section 207] is the actual distance of the victim's movements.' [Citations omitted.] Arbitrary boundaries established by buildings or other enclosures, ownership of property, fences, and other points of reference will themselves vary in size and distance. Thus the character of the victim's movements cannot be determined *simply* on the basis that the victim remained inside or was taken outside a particular area." (Italics added.) (*People* v. *Brown, supra,* at p. 789, fn. 6.) This language does not preclude consideration of movement beyond arbitrary boundaries as a *factor* in the determination of the character of the movement, it precludes only in the framework of using arbitrary boundaries as the *sole factor* in the determination.

Here the victim was forced from her house, past three residences, onto the beach and finally under a pier. The actual distance involved was about 200 feet. In determining whether the movement was trivial or substantial, we find some significance in the movement being from her house to underneath a pier on the beach, suggesting substantial movement. However, we may not rely on this alone. (*People* v. *Brown, supra,* at p. 789, fn. 6.) We thus turn to consideration of the " 'actual distance of the victim's movements.' " (*Id.*)

*Stanworth,* quoting from *Daniels,* says: "In enacting section 207, the Legislature did not provide a definition of kidnaping that involves movements of an exact distance; rather, it defined it in minimum terms as forcible movements 'into another part of the same county.' (§ 207.) Indeed, 'to define the phrase, "another part of the same county," in terms of a specific number of inches or feet or miles would be open to a charge of arbitrariness. . . . [Nonetheless] [t]he law is replete with instances in which a person must, at his peril, govern his conduct by such nonmathematical standards as "reasonable," "prudent," "necessary and proper," "substantial," and the like.' (*Daniels,* 71 Cal.2d at pp. 1128-1129.)" (At pp. 600-601.)

The increasing complexity of the law marches on. What *Stanworth* and *Brown* seem to teach is this: the test of simple kidnaping *is not* (1) whether the movement is incidental to an underlying crime (*People* v. *Stanworth, supra,* at pp. 598, 600); (2) whether there is an increase in the risk of harm above that present in an underlying crime (*People* v. *Stanworth, supra,* at pp. 598, 601); (3) a mathematical formula (*People* v. *Stanworth, supra,* at pp. 600-601); or (4) the crossing of arbitrary boundaries. (*People* v. *Brown, supra,* at p. 789, fn. 6.) Thus we are left to ponder what the movement *is* in simple kidnaping. We are told it "is the actual distance of the victim's movements" and they must be substantial in character (*People* v. *Brown, supra,* at pp. 788-789 fn. 6; *People* v. *Stanworth, supra,* at p. 601) but, of course, it is not a question of mathematical measurement or crossing of arbitrary boundaries. Thus, we are led in circles.

In *Stanworth* the court concluded: "[W]e cannot conclude as a matter of law from the uncontradicted evidence in the record that defendant did not commit the act of kidnaping when he forced the victims at gunpoint to walk for a distance of one-quarter of a mile. Such a distance cannot be reasonably regarded as slight or insubstantial." (At p. 603.) In *Brown* the court concluded: "The asportation of the victim within her house and for

a brief distance outside the house must be regarded as trivial." (At p. 789.) The distance traversed outside was 75 feet. What is the difference between these two cases if all that is *not* to be considered is omitted? This is an apparently hopeless task.[4]

In truth the mathematical differences in distances had to play into the decisions. With this in mind, it cannot be said whether 200 feet, standing alone, is trivial or substantial movement. However, this 200 feet becomes more a substantial distance when it is considered it accomplished the purpose of removing the victim from the ready help of her mother. Also, as above indicated, the boundaries traversed, the locations involved, suggest that something more than trivial movement here existed. The nonexistence of movement merely incidental to an underlying crime also leads to the conclusion of substantial rather than trivial movement.[5]

We believe the facts and circumstances of this case to be sufficient to support the conclusion that the movement involved was substantial in character rather than trivial and thus the simple kidnaping conviction must be affirmed.

II

SUFFICIENCY OF THE EVIDENCE GENERALLY

Defendant attacks the sufficiency of the evidence by contending that the testimony of the victim was inherently incredible. Defendant presses this issue by completely disregarding the fundamental rules that are controlling.

■ Before a judgment of conviction can be set aside for insufficiency of the evidence to support the verdict of the jury, it must clearly appear that upon no hypothesis whatever is there sufficient substantial evidence to support it. (*People* v. *Redmond,* 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].) ■ "This court must view the evidence in a light most favorable to respondent and presume in support of the judgment the

---

[4]For an analysis of what California law *was,* see Perkins on Criminal Law (2d ed. 1969) pages 177-178. According to Perkins' analysis, it is the fact of asportation and not the distance moved which controls.

[5]Defendant argues the movement was merely incidental to additional sex acts (the attempted oral copulation). This is not true in that (1) the movement was not necessary to commission of additional sexual offenses; and (2) the movement would have been no less a crime if defendant had merely sat with his victim under the pier and chatted.

existence of every fact the trier could reasonably deduce from the evidence. [Citation.] If the circumstances reasonably justify the trial court's findings, reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding. [Citations.] ■ The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact; it is not whether guilt is established beyond a reasonable doubt. [Citation.]" (*People* v. *Redmond, supra,* 71 Cal.2d 745, 755.) The credibility of witnesses and the weight to be accorded to the evidence are matters to be determined by the jury. (Evid. Code, § 312.)

■ " 'Although an appellate court will not uphold a judgment or verdict based upon evidence inherently improbable, testimony which merely discloses unusual circumstances does not come within that category. [Citation omitted.] To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.] Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation omitted.]' [Citations omitted.]" (*People* v. *Jones,* 268 Cal.App.2d 161, 165 [73 Cal.Rptr. 727].)

Application of the above rules to those matters raised by defendant renders them meritless. While responses and explanations were not perfect, this case does not remotely approach the concept of inherently improbable evidence. Nor is the attack upon the victim's character and the display of defendant's good character being presented to the proper forum. Defendant has failed to sustain the contention.

### III

#### DOUBLE PUNISHMENT

■ Defendant contends the proscription of Penal Code section 654 against double punishment has been violated in this case. He states the sentence was improper and that between burglary and rape, the rape sentence must be set aside, and between attempted oral copulation and kidnaping, the oral copulation sentence must be set aside.

In the instant case no sentence was pronounced. The court suspended imposition of sentence and granted probation.

Penal Code section 654 proscribes double *punishment,* not double conviction, and thus it is the double penalty, not the double conviction that is brought into question. To comply with section 654 it is only necessary to eliminate the double punishment, not the double conviction. (*People* v. *McFarland,* 58 Cal.2d 748, 762-763 [26 Cal.Rptr. 473, 376 P.2d 449].)

Probation is an act of grace and clemency designed to allow rehabilitation (*People* v. *Banks,* 53 Cal.2d 370, 386-388 [ 1 Cal.Rptr. 669, 348 P.2d 102]; *People,* v. *Cortez,* 199 Cal.App.2d 839, 843-844 [19 Cal.Rptr. 50]) and is not within the ambit of the double punishment proscription of Penal Code section 654. (*People* v. *King,* 218 Cal.App.2d 602, 611 [32 Cal.Rptr. 479]; see *People* v. *Mack,* 2 Cal.App.3d 724, 729-730 [82 Cal.Rptr. 771].)

Judgment affirmed.