[Crim. No. 19707. First Dist., Div. Four. Sept. 25, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN WILLIAM JACKSON, Defendant and Appellant.

562

Counsel

John M. Hanley, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Herbert F. Wilkinson and Michael Buzzell, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**CHRISTIAN, J.**—Defendant John William Jackson was convicted of rape (Pen. Code, § 261, subd. 3) and forcible oral copulation (Pen. Code, § 288a, subd. (c)) after a trial by jury and was also found to have used a deadly weapon in the commission of the offenses (Pen. Code, § 12022, subd. (b)). He was subsequently found not to be a mentally disordered sex offender (MDSO) (Welf. & Inst. Code, § 6300 et seq.).

On appeal defendant asserts that prejudicial error occurred when the trial court admitted evidence that he had committed a prior offense, that the evidence was insufficient to support the convictions and the "use" finding, and that the finding that he was not an MDSO was not supported by the record. We reject these contentions.

On November 9, 1978, the victim was asleep in the front room of the Aries Massage Parlor when she was awakened because a towel had been placed over her face, impairing her breathing. She saw defendant standing over her holding an 18-inch pair of scissors which were normally kept in the medicine cabinet in the bathroom of the massage parlor. A brief struggle followed, and the victim smelled alcohol on defendant's breath. In an effort to stall, she suggested to defendant that they would be more comfortable in the back room of the massage parlor. Upon arriving in the back room, defendant undressed the victim and forced her to perform oral copulation. After a brief conversation, defendant then had sexual intercourse with the victim. Upon returning to the front room, the victim made two phone calls after assuring defendant that she was not calling the police. Through signaling she conveyed to a friend that she needed help. Shortly thereafter, Officers

Paul Tessier and Michael Loesch arrived at the massage parlor and arrested defendant. The officers found a footprint which matched the pattern on defendant's shoes on the toilet lid in the bathroom, indicating that he had entered the premises through the bathroom window.

At trial a witness testified that in February of 1977 she had been awakened by defendant, who was holding a knife, and had been forced to perform two acts of oral copulation. There was evidence that defendant had entered through the bathroom of the apartment, that they had talked for a while, and that defendant appeared confused.

I

Defendant contends that prejudicial error occurred when the trial court admitted evidence of the February 1977 oral copulation. Prior to trial counsel for defendant informed the court that his trial theory would be that the victim in the present case had consented to the sexual acts. When the judge subsequently admitted evidence of the prior offense, he explained that by trying to show that the victim consented, defendant had placed his intent at issue. Defendant now contends that the admission of the forced act of oral copulation in 1977 was not relevant because the lack of consent by that victim does not show a lack of consent in the present case.

■ As a general rule, evidence that a defendant committed other offenses is inadmissible if offered solely to prove his criminal disposition or propensity. (Evid. Code, § 1101, subd. (a); *People* v. *Kelley* (1967) 66 Cal.2d 232, 238 [57 Cal.Rptr. 363, 424 P.2d 947].) The primary purpose of this rule is to protect against misuse of uncharged acts, prejudicing the defendant in the minds of the jurors. (*People* v. *Cramer* (1967) 67 Cal.2d 126, 129 [60 Cal.Rptr. 230, 429 P.2d 582].) ■ Nevertheless, "[i]t is settled that evidence of other crimes is ordinarily admissible where it tends to show guilty knowledge, motive, intent . . . ." (*People* v. *Kelley, supra,* 66 Cal.2d at p. 239.) ■ When prior offense evidence is relevant to prove some material fact at issue, other than the mere general disposition of the defendant to commit such offenses, it is generally admissible. (Evid. Code, § 1101, subd. (b).) The trial court, however, "may [in its discretion] exclude evidence if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice." (Evid. Code, § 352.) The court will be held to have abused its discretion if it admits evidence, the probative value of which is outweighed by its

prejudicial effect. (*People* v. *Haston* (1968) 69 Cal.2d 233, 246 [70 Cal.Rptr. 419, 444 P.2d 91].)

■ Even if evidence of a prior crime is offered for the admissible purpose of proving intent, it should be excluded unless it is logically relevant to prove the defendant's intent in the charged offense. (*People* v. *Thompson* (1980) 27 Cal.3d 303, 318-319 [165 Cal.Rptr. 289, 611 P.2d 883].) Evidence of a prior offense is logically relevant to prove the defendant's intent if the prior offense was sufficiently similar in its commission to the charged offense to indicate that the defendant probably harbored the same intent in both instances. (Cf. *People* v. *Thompson, supra,* 27 Cal.3d at pp. 319-321 [insufficient similarity of offenses to invest the evidence of the prior offense with probative value substantial enough to outweigh prejudicial effect].) The admission of such evidence is not an abuse of discretion.

■ Additionally, in cases involving sex crimes, evidence of similar, nonremote prior sex offenses is admissible to corroborate the victim's testimony on a material issue such as the intent of the defendant. (*People* v. *Thomas* (1978) 20 Cal.3d 457, 468-469 [143 Cal.Rptr. 215, 573 P.2d 433]; *People* v. *Hunt* (1977) 72 Cal.App.3d 190, 199-203 [139 Cal.Rptr. 675].) Such evidence is admissible because "by reason of the unique circumstances of privacy and seclusion surrounding the commission of most sex offenses the determination of witness credibility plays a central role." (*People* v. *Thomas, supra,* 20 Cal.3d at p. 468.) ■ Defendant's trial theory, that the victim had consented to the sexual acts, was tantamount to a denial that he had intended to achieve oral copulation and sexual intercourse by force or intimidation. Evidence of prior offenses was thus admissible to establish defendant's intent in the present offense by corroborating the victim's testimony that she had not consented to the sex acts, so long as those prior offenses were not too remote and were similar to the offense charged. (See *People* v. *Jackson* (1980) 102 Cal.App.3d 620, 625 [162 Cal.Rptr. 574].) The court's limiting instruction, that the evidence of the prior offense was admissible to prove intent, was appropriate to both theories of admissibility.

The present offense and the prior offense were close in time (one year and nine months apart) and shared several similar marks. In each case defendant entered the premises through the bathroom during early morning hours. Upon gaining entry, he armed himself with an instrument, found inside the building, which could be used for cutting or

stabbing. In both instances he approached his victim by placing his hand over the victim's mouth while holding the weapon in an attack position above the victim's head. Defendant forced each victim to perform an act of oral copulation, then remained and engaged the victim in rather protracted conversation. Finally, it is noted that the victims in both cases were young women. There were an adequate number of common features in both cases to give rise to a reasonable inference that defendant harbored the same intent in both instances. Therefore the trial court could reasonably determine that the probative value of the prior offense outweighed its prejudicial effect. The court did not abuse its discretion when it admitted evidence of the prior offense.

## II

Defendant next contends that the evidence was insufficient to support the jury's verdict. ■ As noted in *People* v. *Hillery* (1965) 62 Cal.2d 692, 702 [44 Cal.Rptr. 30, 401 P.2d 382], cert. den. 386 U.S. 938 [17 L.Ed.2d 810, 87 S.Ct. 958.], reh. den. 386 U.S. 1000 [18 L.Ed.2d 355, 87 S.Ct. 1310], "'[t]he test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact. It is not whether guilt is established beyond a reasonable doubt. . . .'"

Defendant argues that the entire case against him rests upon the testimony of the victim which was so "thoroughly impeached by her prior inconsistent statements as to render it unbelievable," and that significant portions of her testimony were innately implausible and not corroborated by other witnesses.

The victim's testimony was certainly a central part of the prosecution's case, but it was not the only evidence. The testimony of the prior victim, as well as that of Officers Tessier and Loesch, served to corroborate the victim's testimony in important aspects. In addition, a footprint which matched the pattern on the soles of defendant's shoes was found on the toilet seat in the bathroom of the massage parlor.

Defendant points to several instances in which he contends the record reflects inconsistent statements made by the prosecutrix. For example, he notes that the victim testified at trial that he was wearing boots with grease, while at the preliminary hearing she said he wore black boots. At the preliminary hearing she testified that defendant's zipper was still unfastened when they walked toward the back room and that defendant, unaided, undressed her. At trial she testified that defendant

zipped up his zipper while proceeding to the back room and that she almost entirely undressed herself.

■ Assuming that these inconsistencies are significant, conflicts and even testimony which is subject to justifiable suspicion do not justify the overturning of a judgment, because it is the exclusive province of the trier of fact to determine the credibility of a witness and the truth or falsity of the evidence upon which a determination depends. (*People* v. *Stender* (1975) 47 Cal.App.3d 413, 424 [121 Cal.Rptr. 334].)

Defendant also asserts that the victim's testimony is implausible at certain points. For instance, he challenges her justification for suggesting to him that they would be more comfortable in the back room. The victim testified that she suggested the move to the back room in order to stall for time. Defendant contends that if she had really been afraid, she would not have offered to leave the relatively safer front room for the more dangerous back room. ■ While an appellate court will not uphold a judgment or verdict based upon evidence inherently improbable,"" . . . testimony which merely discloses unusual circumstances does not come within the category. [In order to reject] the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inference or deductions. . . ."""" (*People* v. *Stender, supra*, 47 Cal.App.3d 413, 424.) While the victim's explanation for suggesting a move to the back room may be questioned, she did not testify to a physical impossibility and her testimony on the point was not apparently false.

The evidence was sufficient to support the verdict.

### III

Defendant contends that the finding of weapon use was not supported by the evidence for three reasons: (1) Officer Loesch found the scissors in the medicine cabinet in the bathroom—where they are normally kept—and the victim offered no explanation of how they found their way back into the cabinet; (2) no fingerprints could be found on the scissors; and (3) according to the victim's own testimony, the scissors were in defendant's pants which were lying on the floor during the acts of sexual intercourse and oral copulation. Thus, it cannot be said that he "used" a deadly weapon.

These contentions cannot be sustained. There was testimony upon which a jury could have found beyond a reasonable doubt that defendant in fact used a deadly weapon. The victim testified that she awoke to find defendant standing over her and holding the 18-inch scissors and that she complied with defendant's demands because she was afraid for her safety and continued to be afraid. Finally, an expert witness testified that there were smudges on the scissors and that it was not unusual not to find fingerprints on articles of evidence.

### IV

Defendant's final contention is that the trial judge's determination that he is not an MDSO was neither supported by the record nor based on the merits, but was instead the result of the personal objections of the judge to current law and administrative practices governing the treatment of MDSOs. He argues that the judge ruled based on the fear that the defendant might be released on outpatient treatment after only one year of confinement and supports his contention by citing a statement made by the trial judge three days before his ruling:

"My basic consideration is to the community. This man has raped and committed serious sexual abuses on two women for which he has been convicted. . . .

"Now, if I was assured, somehow, and I will speak quite frankly, that this community would be secure from his future conduct for a considerable period of time, I wouldn't care either way. I wouldn't have any problem going either way, either place, if it would bring about his possible rehabilitation. Then give him a break and go to Atascadero.

"But if he is going to be released from Atascadero on an outpatient basis in a year, I don't know what we are going to do. Unfortunately, the law used to be that you would be there for ninety days, they would come back with a report, we would have some indication from them."

As stated in *People* v. *Moore* (1968) 257 Cal.App.2d 740, 750 [65 Cal.Rptr. 450], "[i]t is fundamental that the trier of fact, be it court or jury, must not consider the subject of penalty or punishment in arriving at its decision of guilt or innocence." The issue in *Moore*, as in the instant case, surrounded the defendant's mental state. The trial judge ruled that the defendant had not established that he had suffered from a diminished mental capacity during the commission of a homi-

cide. The trial judge in *Moore*, therefore, refused to reduce the degree of the crime from murder to manslaughter. The Court of Appeal in its decision reversing the judgment stated: "It seems inescapable...that at least one of the reasons the court refused to reduce the degree of crime to manslaughter was its belief that society needed protection from defendant by 'a more permanent, more lengthy' period of confinement." (*People* v. *Moore, supra*, at p. 751.)

*Moore* is readily distinguished. There the trial judge apparently believed that the possible length of confinement was a relevant consideration in determining whether the level of culpability was to be reduced on a showing of diminished capacity. (*People* v. *Moore, supra*, 257 Cal.App.2d 740, 751.) ■■ In contrast, the trial judge's decision in the instant case, while obviously expressing his personal disapproval of the present state of the law with regard to MDSOs, was not based on the erroneous view that the length or type of confinement is an actual element in the standard for determining whether an individual is an MDSO. While three of the five expert witnesses (a licensed clinical social worker, a clinical psychologist and a neuropsychiatrist) testified that defendant was an MDSO, two psychiatrists testified that he was not an MDSO. The trial judge stated, in ruling that the defendant did not come within section 6300 of the Welfare and Institutions Code, his reasons for so finding: "[The] Court is of the belief at this time that he does not, I don't think the proof is there, that's beyond a reasonable doubt. There is testimony which I will accept that he has certain personality problems, but it strikes me that those personality problems are not any more unique than many of the defendants who appear before this Court, nor are they particularly unique that appear before Court in civil matters, particularly in domestic relations matters. I think the proof is insufficient."

These remarks do not suggest that the judge believed that the length of confinement must be a factor in a decision to determine whether a defendant is an MDSO; on the contrary, the language indicates that the judge ruled on the merits. A ruling based on substantial evidence and made on the merits may not be reversed on appeal.

The judgment is affirmed.

Caldecott, P. J., concurred.

**POCHÉ, J.**—I dissent.

I have serious reservations as to the propriety of the trial court's order admitting evidence that, 21 months before his encounter with the alleged victim (Ms. D) in this case, appellant had forced another woman (Ms. L) to engage in oral copulation in similar circumstances. My colleagues conclude that evidence of the attacks on Ms. L was admissible for either of two purposes: to prove appellant's criminal *intent* with respect to Ms. D and to *corroborate* Ms. D's testimony. My perception of the record in this case, and of the language of Evidence Code section 1101, subdivision (a), as construed generally by our Supreme Court, leads me to disagree with my colleagues as to the first proposed predicate for admissibility; the instructions given by the trial court preclude consideration of the second predicate.

### Intent

Where the People seek to prove the criminal intent of the alleged perpetrator of a sex crime by evidence that on other occasions he acted similarly and with the requisite intent (cf., Evid. Code, § 1101, subd. (b); *People* v. *Kelley* (1967) 66 Cal.2d 232, 240 [57 Cal.Rptr. 363, 424 P.2d 947]; cf. also *People* v. *Thomas* (1978) 20 Cal.3d 457, 465 [143 Cal.Rptr. 215, 573 P.2d 433]), the law instructs the trial court to receive the tendered evidence only with "extreme caution." (Cf., e.g., *People* v. *Kelley, supra*, 66 Cal.2d at p. 239.) Evidence of other crimes necessarily "has a 'highly inflammatory and prejudicial effect' on the trier of fact" (*People* v. *Thompson* (1980) 27 Cal.3d 303, 314 [165 Cal.Rptr. 289, 611 P.2d 883]); this concern is particularly pressing in sex cases because "charges of sex offenses are often unreliable and particularly difficult to disprove." (*People* v. *Kelley, supra*, 66 Cal.2d at p. 240.) It follows that, in sex cases even more than in other criminal cases, if the connection of evidence of other similar crimes "with the crime charged is not clearly perceived, the doubt should be resolved in favor of the accused." (*Id.*, at p. 239.)

"Thus, admission of other crimes evidence cannot be justified merely by asserting an admissible purpose. Such evidence may only be admitted if it '(a) "tends logically, naturally and by reasonable inference" to prove the issue upon which it is offered; (b) is offered upon an issue which will ultimately prove to be material to the People's case; and (c) is not merely cumulative with respect to other evidence which the People may use to prove the same issue.'" (*People* v. *Guerrero* (1976) 16

Cal.3d 719, 724 [129 Cal.Rptr. 166, 548 P.2d 366], quoting from *People* v. *Schader* (1969) 71 Cal.2d 761, 775 [80 Cal.Rptr. 1, 457 P.2d 841].) In short, evidence of a defendant's criminal conduct on other occasions should be admitted only: "when the probative value of such evidence outweighs its prejudicial effect. [Citations.] This balancing test is necessarily particularistic, depending not upon mechanically automatic rules, but upon the trial court's consideration of the unique facts and issues of each case ...." (*People* v. *Schader, supra,* 71 Cal.2d at pp. 773-774.)

Aside from these balancing rules, the law plainly proscribes any attempt to prove the elements of a crime charged against a defendant by way of his criminal disposition or propensity as arguably inferred from his criminal conduct on other occasions: Evidence Code section 1101, subdivision (a), states the general rule that "evidence of a person's character or a trait of his character ( ...in the form of... evidence of specific instances of his conduct) is inadmissible when offered to prove his conduct on a specified occasion." Our Supreme Court has newly observed that "Subdivision (a) does not permit a court to balance the probative value of the evidence against its prejudicial effect. The inference of a criminal disposition may not be used to establish any link in the chain of logic connecting the uncharged offense with a material fact. If no theory of relevancy can be established without this pitfall, the evidence of the uncharged offense is simply inadmissible." (*People* v. *Thompson, supra,* 27 Cal.3d at p. 317.)

In all the circumstances of the case before us I conclude that evidence of appellant's attack upon Ms. L could have been probative of his intent with respect to Ms. D only by way of an impermissible inference that he was predisposed to commit forcible oral copulation, and therefore that such evidence should not have been received to prove intent.

Neither of the crimes charged required proof of a specific intent: in addition to the physical act connoted by each crime it was incumbent upon the People to prove that Ms. D did not consent and that appellant had a general criminal intent to commit the act without regard to whether Ms. D. consented. (Cf., Pen. Code, §§ 261, 288a; *People* v. *Franklin* (1976) 56 Cal.App.3d 18, 27 [128 Cal.Rptr. 94]; *People* v. *Avanzi* (1938) 25 Cal.App.2d 301, 302 [77 P.2d 237]; *People* v. *Thornton* (1974) 11 Cal.3d 738, 765 [114 Cal.Rptr. 467, 523 P.2d 267], disapproved as to an unrelated issue in *People* v. *Flannel* (1979) 25 Cal.3d 668, 685, fn. 13 [160 Cal.Rptr. 84, 603 P.2d 1]; *People* v. *May-*

*berry* (1975) 15 Cal.3d 143, 155 [125 Cal.Rptr. 745, 542 P.2d 1337].) The only direct evidence of the crimes was provided by Ms. D, who testified that she awoke to find appellant standing over her, covering her face and nose with a towel and holding long scissors, that she struggled with him briefly, but that she then submitted to oral copulation and sexual intercourse because she was afraid and that she did not voluntarily consent to the acts. If accepted as true Ms. D's account amply supported an inference that appellant harbored the requisite general intent. Appellant did not testify and presented no other evidence. Appellant's attorney advised the court at the outset that "consensual sex is the issue in this case," but then, by cross-examination and summation, launched a broadcast attack upon Ms. D's credibility, going so far as to suggest to the jurors, in summation, that they might choose to disbelieve that sexual acts had occurred at all. Counsel focused on the question whether Ms. D had consented, an issue essentially distinct from the matter of appellant's criminal intent (cf., *People* v. *Hunt* (1977) 72 Cal.App.3d 190, 200 [139 Cal.Rptr. 675]) and as to which evidence that on another occasion another woman had not consented would be wholly irrelevant.

In this posture of the record the jury's attention was directed to the issue of appellant's intent only in the general sense that all elements of the crime had been put in issue by appellant's not guilty pleas: appellant's intent was not singled out, and there was no apparent need for the People to present additional evidence on that issue as distinct from any other issue in the case. Obviously the critical question raised by counsel and unmistakably presented to the jury was Ms. D's credibility: had appellant behaved in the way which Ms. D described? If he had, then a finding of the requisite intent would be a simple second step. If he had not, then Ms. D's admitted subsequent acquiescence was explicable only in terms of voluntary consent and appellant would be guilty of neither crime. Thus in the circumstances of this case the preemptive impact of proof of appellant's prior attack on Ms. L would be to lend credence to Ms. D's testimony by way of a finding that appellant had a propensity or disposition to employ force upon sleeping women as a prelude to oral copulation. Once it was established that appellant had approached Ms. D in the manner which she described, an inference of the requisite intent would logically arise. But as construed in *Thompson* subdivision (a) of section 1101 forbids use of an inference of criminal propensity or disposition "to establish any link in the chain of logic connecting the uncharged offense with a material fact." (*People* v. *Thompson, supra*, 27 Cal.3d at p. 317.) And quite apart from the *Thompson* analysis, in my

view the likelihood that the jury would misuse the evidence of appellant's conduct with Ms. L simply as evidence of appellant's conduct with Ms. D, to appellant's manifest prejudice, was too great to be outweighed by the problematic probative value of the prior offense on the narrow issue of intent.

## Corroboration

The alternative theory to support admission of the other crimes evidence is that it provided corroboration of the prosecuting witness' version of events. Application of that theory was not argued by the People at trial nor was it suggested by the Attorney General in his briefs here.

As an original proposition, proof of appellant's prior attack on Ms. L would have no tendency in logic to corroborate Ms. D's testimony as to her own thoughts and actions or as to her observations of the acts of third persons: such proof could only tend to corroborate Ms. D's description of appellant's conduct, and would do so only by virtue of an inference that if appellant attacked Ms. L in a certain way in 1977 he probably attacked Ms. D in a similar way in 1978. Subdivision (a) of section 1101 appears to me flatly to prohibit such use of prior conduct. (Cf., *People v. St. Andrew* (1980) 101 Cal.App.3d 450, 464 [161 Cal.Rptr. 634].) Nevertheless our Supreme Court has relatively recently declared that sufficiently similar conduct on another occasion *can* be admitted to corroborate the victim's testimony in a sex case. (*People v. Pendleton* (1979) 25 Cal.3d 371, 378 [158 Cal.Rptr. 343, 599 P.2d 649]; *People v. Thomas* (1978) 20 Cal.3d 457, 468 [143 Cal.Rptr. 215, 573 P.2d 433]; cf., also, *People v. Kazee* (1975) 47 Cal.App.3d 593, 596 [121 Cal.Rptr. 221].) Surely the attack on Ms. L and that reported by Ms. D are sufficiently similar: the rule declared in *Pendleton* and *Thomas* appears applicable, and my colleagues and I are bound by it. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

Had the trial court instructed the jury that they could use the evidence of defendant's prior criminal conduct to corroborate the present victim's testimony the rule of *Pendleton* and *Thomas* would be applicable. But that instruction was not given. Instead the jury was clearly instructed to consider the evidence of the attack on Ms. L "only for the limited purpose of determining if it tends to show...intent..." and was told that "[y]ou are not permitted to consider such evidence for

any other purpose." It is therefore understandable that the Attorney General did not argue here that the jury could use the evidence for corroboration: they were told not to.

Since it was error to use this evidence for proving intent and because the jury under the instructions given was allowed to use this evidence only for that improper purpose, it is irrelevant that instructions *could* have been given which would have allowed its use for corroboration.

The prejudicial nature of the erroneously admitted evidence is obvious. (*People* v. *Kelley, supra,* 66 Cal.2d 232, 245 [57 Cal.Rptr. 363, 424 P.2d 947]; *People* v. *Guerrero, supra,* 16 Cal.3d 719, 730 [129 Cal.Rptr. 166, 548 P.2d 366]; *People* v. *Thomas, supra,* 20 Cal.3d 457, 470 [143 Cal.Rptr. 215, 573 P.2d 433].) Appellant deserves a new trial on relevant, nonprejudicial evidence accompanied by proper instructions.

Appellant's petition for a hearing by the Supreme Court was denied November 19, 1980. Bird, C. J., was of the opinion that the petition should be granted.