The **PEOPLE** of the State of Colorado, Plaintiff-Appellee,

v.

Mario Carlos **REYES,** Defendant-Appellant.

No. 84CA0891.

Colorado Court of Appeals, Div. I.

June 19, 1986.

Rehearing Denied July 24, 1986.

Certiorari Denied (Reyes) Oct. 20, 1986.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Peter J. Stapp, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Rachel A. Bellis, Deputy State Public Defender, Denver, for defendant-appellant.

ENOCH, Chief Judge.

Defendant, Mario Carlos Reyes, appeals from the judgment and sentences entered pursuant to jury verdicts finding him guilty of one count of first degree kidnapping, one count of first degree sexual assault, two counts of violent crime, and three counts of prior felony convictions, thus invoking the habitual criminal statute. We affirm in part and set aside in part.

Defendant was charged with first degree kidnapping in violation of § 18–3–301, C.R.S. (1978 Repl.Vol. 8), first degree sexual assault in violation of § 18–3–402, C.R.S. (1985 Cum.Supp.), and with two counts of violent crime in connection with these offenses pursuant to Colo.Sess.Laws 1981, ch. 198, § 16–11–309. The information was subsequently amended to include three additional counts alleging that defendant was an habitual criminal under § 16–13–101(2), C.R.S. (1985 Cum.Supp.). A jury returned guilty verdicts on all counts.

Following the presentation of habitual criminal evidence and instructions, the jury found that defendant had been convicted of three separate prior felonies as required by § 16–13–101(2), C.R.S. (1985 Cum.Supp.). The trial court sentenced defendant to the department of corrections for a term of life on the kidnapping count, 24 years on the sexual assault count, and life on the habitual criminal counts, all sentences to run concurrently.

I.

Defendant's first argument on appeal is that no conflict of interest existed relative to the public defender's representation of him and that, therefore, the trial court erred in granting the state's motion to disqualify the public defender and that the disqualification deprived defendant of his Sixth Amendment right to counsel. We disagree.

Before trial, the state filed a motion to disqualify the public defender as counsel for defendant. The state alleged, among other things, that a public defender investigator had interviewed Brent Montoya, a prosecution witness in defendant's case, to determine Montoya's eligibility for public defender representation in connection with an unrelated criminal mischief charge against him. It was alleged that during the interview Montoya had been asked and had answered questions about the defendant's case, and that when he was later interviewed by the state in connection with defendant's case, he made statements which were damaging to defendant and inconsistent with his earlier statements to the public defender investigator.

In light of these circumstances, the state argued that if Montoya were to be cross-examined at defendant's trial by the public defender, it would be a violation of Code of Professional Responsibility Canon 9 and DR 4–101(B)(3). After hearing arguments from both parties, the trial court determined that the requested disqualification was necessary to "clear the air" and avoid a potential conflict of interest, and therefore removed the public defender as trial counsel for defendant, and appointed private counsel, who represented defendant throughout the trial proceedings and filed the notice of appeal. A public defender of the appellate division was appointed to represent defendant at the appellate level.

A determination of whether an attorney should be disqualified is a matter largely within the discretion of the trial court. *See Cleary v. District Court,* 704 P.2d 866

(Colo.1985); *People v. Garcia*, 698 P.2d 801 (Colo.1985). Based on the record, we perceive no abuse of discretion by the trial court in ordering the public defender to withdraw from defendant's case.

We agree with the trial court's conclusion that the public defender's prior representation of a prosecution witness whose credibility was to be at issue in defendant's trial and the public defender's present representation of defendant created a conflict of interest. *See Rodriguez v. District Court*, 719 P.2d 699 (Colo.1986). The circumstances here gave rise to justifiable concern that the public defender's representation of the defendant and concomitant duty to cross-examine and attempt to impeach Montoya as a witness for the prosecution might affect the "fairness or appearance of fairness of trial." *See People v. Garcia, supra.*

We also agree with the trial court's conclusion that, because of this inherent conflict, disqualification of the public defender was appropriate.

Our supreme court's recent decision in *Rodriguez, supra*, does not mandate a different result here, because we do not in this case have a waiver by defendant of conflict-free representation which was a key factor in *Rodriquez, supra*. Disqualification was therefore appropriate and not an abuse of the trial court's discretion.

■ Furthermore, the disqualification of the public defender's office did not deny defendant his constitutional right to counsel. While the right to counsel is absolute, there is no right to a particular counsel. *People v. Blalock*, 197 Colo. 320, 592 P.2d 406 (1979). "This is especially true where continued representation of defendant by a particular attorney or firm would create ethical conflicts." *Osborn v. District Court*, 619 P.2d 41 (Colo.1980).

## II.

■ Defendant next argues that the use of his three prior convictions to support his adjudication under the habitual criminal statute violated his right to due process of law because the convictions were constitutionally invalid. We find no constitutional defects in any of the convictions.

The use of constitutionally invalid prior convictions to enhance a defendant's sentence under an habitual criminal sentencing scheme violates due process. *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967); *Watkins v. People*, 655 P.2d 834 (Colo.1982). Due process requires a conviction based on a guilty plea to be voluntarily and understandingly made. *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1978). To ensure that constitutional standards are satisfied, the record must affirmatively show "the defendant's understanding of the critical elements of the crime to which the plea is tendered." *Watkins, supra.* In most cases, compliance with Crim.P. 11(b) is sufficient to satisfy these constitutional standards. *People v. Wade*, 708 P.2d 1366 (Colo.1985).

After review of the transcripts of the providency hearings at which the challenged pleas were entered, we conclude that each of the pleas complied fully with Crim.P. 11(b) and constitutional standards.

### A. The 1979 Plea

■ With respect to his 1979 plea to second degree assault, defendant argues that because the court did not advise him specifically on the meaning of the phrase "bodily injury," a critical element of the offense, that plea was invalid.

We do not agree with defendant's contention that the term "bodily injury" has a technical legal meaning and significance which distinguishes it from its common meaning and requires a detailed explanation of the term by the court. The degree of explanation required by a court depends on the nature and complexity of the crime. *People v. Leonard*, 673 P.2d 37 (Colo.1983). Here, the charge of second degree assault is not a highly technical one, and the phrase "bodily injury" is understandable to a person of average intelligence. *See People v. Edwards*, 186 Colo. 129, 526 P.2d 144

(1974); *cf. People v. Cabral*, 698 P.2d 234 (Colo.1985).

■ We also do not agree with defendant's argument that the court failed fully to advise defendant of the constitutional rights waived by a plea of guilty. There is neither a constitutional nor statutory requirement that defendant be specifically advised of every constitutional right to which he is entitled, *People v. Wade, supra*, so long as he is advised of the rights set forth in Crim.P. 5(a)(2) and 11(b). The court here fully complied with these statutory provisions.

### B. The 1975 Plea

With respect to his 1975 plea to second degree forgery, defendant argues that the nature and critical elements of this complicated offense were not fully explained to him at his providency hearing. We disagree.

Defendant previously challenged this plea in a Crim.P. 35(c) motion, and the denial of that motion was appealed to this court. In *People v. Reyes*, 713 P.2d 1331 (Colo.App.1985), this court found that, in light of the detailed explanation defendant had received at the earlier hearing plus his acknowledgment that he understood the charge, the plea had been validly entered. We perceive no reason to disapprove that holding.

### C. The 1972 Plea

■ With respect to defendant's 1972 plea to second degree assault, defendant argues that, because he was not advised of the nature and elements of the charge, his plea was constitutionally infirm.

The record of the 1972 providency hearing shows that defendant answered the advising court's questions which explored the voluntariness of the plea, the rights which defendant waived by pleading guilty, and the possible sentences which might be imposed. Further, the court amended the information charging defendant with first degree assault to reflect the lesser included offense of second degree assault, and in doing so, read aloud the amended information which virtually tracked the language of the applicable statute defining the offense of second degree assault.

The information as read by the court adequately explained the charge and included the elements of the offense in language easily understandable to a person of average intelligence. *See People v. Edwards, supra.* Because the language of the charge was not highly technical, no more full explanation had to be given. *See People v. Gorniak*, 197 Colo. 289, 593 P.2d 349 (1979).

■ Defendant further argues that because there is no indication in the record of the 1972 providency hearing that he was specifically advised of the *mens rea* element of second degree assault or that the court defined the term, the court's advisement was insufficient to support his guilty plea.

The information read to defendant stated that he "with intent to cause serious bodily injury to [the victim], did unlawfully and feloniously cause serious bodily injury to [the victim]." This language sufficiently informed defendant of the *mens rea* element of second degree assault in language readily understandable to a person of average intelligence, and defendant acknowledged that he understood the nature of the offense. *See Wilson v. People*, 708 P.2d 792 (Colo.1985). Furthermore, when asked by the court if he understood that in pleading guilty he was admitting the material allegations of second degree assault, the defendant replied affirmatively.

### III.

We agree with defendant, and the state concedes, that the trial court erred in imposing a 24–year sentence on the first degree sexual assault conviction and a life sentence for the "crime of habitual criminal."

■ The habitual criminal statute does not create a substantive offense. *Maestas v. District Court*, 189 Colo. 443, 541 P.2d 889 (1975). Rather, it is an en-

hancement statute, and prescribes the consequences to a defendant convicted of certain offenses, requiring that he be punished more severely because of past criminal activity. *Casias v. People,* 148 Colo. 544, 367 P.2d 327 (1961); *People v. Early,* 692 P.2d 1116 (Colo.App.1984); § 16–13–101(2), C.R.S. (1985 Cum.Supp.). Once an accused has been three times convicted of a felony, the court *must* sentence him to life imprisonment for his current offense or offenses. *Early, supra; People v. Montoya,* 640 P.2d 234 (Colo.App.1981).

 Therefore, the life sentence for first degree kidnapping conviction is correct. However, the 24–year sentence for first degree sexual assault conviction should have been a life sentence and no separate sentence should have been imposed for the habitual criminal adjudication. *See* § 16–13–101(2), C.R.S. (1985 Cum.Supp.).

## IV.

Defendant's final contention is that application of the violent crime statute, Colo.Sess.Laws 1981, ch. 198, § 16–11–309, to the charge of first degree sexual assault constitutes a violation of equal protection, as this court held in *People v. Montoya,* 709 P.2d 58 (Colo.App.1985) (*cert. granted* November 18, 1985). However, as defendant concedes, the supreme court in *People v. Haymaker,* 716 P.2d 110 (Colo.1986), expressly disapproved of *Montoya,* holding that imposition of a sentence in the aggravated range under § 18–1–105(9)(a)(I), C.R.S. (1985 Cum.Supp.), for conviction of a crime of violence under § 16–11–309, C.R.S. (1985 Cum.Supp.) did not deny defendant due process or equal protection. That ruling is dispositive in this case. *See also People v. Vigil,* 718 P.2d 496 (Colo.1986); *People v. Powell,* 716 P.2d 1096 (Colo.1986).

The judgment is affirmed in all respects except as to the court's sentencing of defendant to 24 years for sexual assault and to life on the habitual criminal counts, which are set aside, and the cause is remanded with directions to the trial court to sentence defendant to a second term of life

imprisonment for the sexual assault count, to run concurrently with the life sentence imposed for defendant's conviction for first degree kidnapping.

SMITH and VAN CISE, JJ., concur.