**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Dion R. GRIFFIN, Defendant–Appellant.**

**No. 91CA1763.**

Colorado Court of Appeals,
Div. V.

May 20, 1993.

As Modified on Denial of Rehearing
July 1, 1993.

Certiorari Denied Jan. 31, 1994.

Four youths left the restaurant and approached their vehicle, which was parked next to where defendant and his two companions were standing. One of the three standing by the car asked the four youths for money. All four refused. As the last of the four got into the car, he commented: "Do I look generous?"

One of the three in defendant's group responded that they were going to take the money, reached into the car, and stabbed two of the occupants. The assailant, however, did not succeed in taking anything from the victims.

## I.

Defendant first contends his state and federal constitutional rights of confrontation were violated because the trial court did not permit him to reveal to the jury through cross-examination that a witness was in custody in New Mexico on unrelated charges. We disagree.

At the time of trial the witness was a juvenile from New Mexico and in custody in that state on an unrelated pending auto theft charge. The juvenile was also on probation in New Mexico for unrelated charges.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Laurie A. Booras, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Joan E. Mounteer, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge BRIGGS.

Defendant, Dion Griffin, appeals the judgment entered and sentences imposed on jury verdicts finding him guilty of two counts of first degree assault, two counts of attempted aggravated robbery, and four counts of crime of violence. We affirm as to all convictions except those for attempted aggravated robbery, vacate the convictions for attempted aggravated robbery and remand for resentencing, and vacate the period of parole imposed.

The record reflects that defendant and four other young men decided to take money from someone so that they could pay the cover charge at a bar. They parked in a restaurant parking lot, and defendant and two others got out and stood near the car.

Initially, the People had filed charges against the witness for theft by receiving because the car he was driving at the time of the robbery had been stolen. At a pre-trial hearing the prosecutor stated that the reasons why these charges were dropped were that there was a lack of evidence to support them; the juvenile was expected to remain in New Mexico with his family where unrelated charges were pending; and it was not worth the state's resources to extradite and transport the witness to Colorado and then hold him in custody.

The court found that the witness' custody status was irrelevant to the issues in the case. However, it concluded it would permit defendant to question the witness about the fact that he was on probation in New Mexico during the time of his testimony and that there were new charges pending in New Mexico which might bear upon the status of his probation.

At trial, defense counsel questioned the witness extensively about juvenile adjudications for which he was on probation unrelated to this case, and other juvenile matters pending in New Mexico. The jury was also informed that the witness had been granted use immunity so that his statements could not be used against him, that otherwise the witness would not have testified, and that while in Colorado testifying he was granted immunity from service of process and arrest. Finally, the jury learned that the witness could still be prosecuted to the extent of his involvement in the incident.

■■■ The right of confrontation requires that the defendant have an opportunity to conduct an effective cross-examination of the witnesses against him, but this opportunity does not mean unlimited cross-examination. The scope and duration of the cross-examination are under the control of the trial court. Thus, a trial court has wide latitude to place reasonable limits on cross-examination based on concerns about, for example, interrogation which is repetitive or only marginally relevant. *Merritt v. People*, 842 P.2d 162 (Colo. 1992).

■■■ A trial court nevertheless cannot limit excessively a defendant's cross-examination of a witness regarding the witness' credibility, especially questioning concerning the witness' bias, prejudice, or motive for testifying. *Merritt v. People, supra;* see CRE 611(b).

> [A] trial court should allow broad cross-examination of a prosecution witness with respect to the witness' motive for testifying, especially where such witness is charged with or threatened with criminal prosecution for other alleged offenses not connected with the case in which he testifies, and where his testimony against the defendant might be influenced by a promise of, or hope or expectation of, immunity or leniency with respect to the pending charges against him, as a consideration for testifying against the defendant.

*People v. King*, 179 Colo. 94, 98, 498 P.2d 1142, 1144–45 (1972).

Here, the trial court permitted extensive cross-examination which addressed the witness' possible ulterior motives for testifying.

Defendant, however, argues that *Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968) and *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931) stand for the proposition that it is fundamental to the right of confrontation to establish where the witness is currently residing and that prejudice necessarily ensues from a denial of this right. Thus, he contends, the trial court's restriction was improper. We do not agree.

The witness in *Smith v. Illinois, supra*, had testified to drugs purchased from the defendant with money provided by police officers. After the witness admitted on cross-examination that he had given a false name, defense counsel asked the witness for his correct name and address. The trial court did not permit these questions.

The Supreme Court concluded the trial court's ruling constituted reversible error. However, it did not conclude that the address of a witness must without exception be revealed to a jury. Only this witness and the defendant testified to the crucial events surrounding the transaction. "The only real question at the trial, therefore, was the relative credibility of the [defendant] and this prosecution witness." *Smith v. Illinois*, 390 U.S. at 130, 88 S.Ct. at 749, 19 L.Ed.2d at 958. The Supreme Court reasoned that it was essential to "place the witness in his proper setting" by asking questions relating to where he lived and what he did, so that the jury could examine his credibility. *Smith v. Illinois*, 390 U.S. at 132, 88 S.Ct. at 750, 19 L.Ed.2d at 959.

In *Alford*, the Supreme Court reversed a federal mail fraud conviction because the trial court denied the accused the opportunity to elicit the place of residence of an important prosecution witness. The defendant sought to elicit this testimony because he believed the witness was in federal custody for reasons the defendant was not aware.

In reversing, the Supreme Court emphasized the exploratory nature of the defendant's question. Under those circumstances the need for counsel to articulate the purpose for which the testimony was being elicited did not apply. The purpose for allowing the testimony was to put the weight of the testi-

mony and the credibility of the witness to the test. The testimony might have been relevant:

> to show by such facts as proper cross-examination might develop, that his testimony was biased because given under promise or expectation of immunity, or under the coercive effect of his detention by officers of the United States, which was conducting the present prosecution.... Even if the witness were charged with some other offense [unrelated to this case] ... [defendant] was entitled to show by cross-examination that his testimony was affected by fear or favor growing out of his detention.

*Alford v. United States*, 282 U.S. at 693, 51 S.Ct. at 220, 75 L.Ed. at 628–629.

■ Here, defendant was provided ample opportunity to impeach the witness' credibility by showing ulterior motives for his testimony. Under these circumstances, the excluded testimony would have been of little or no probative force and cumulative. Hence, the trial court neither abused its discretion nor violated defendant's right of confrontation by prohibiting questioning about the one additional fact that the witness was in custody. *See* CRE 403.

## II.

Defendant also asserts that the court gave an inadequate advisement under *People v. Curtis*, 681 P.2d 504 (Colo.1984). Defendant argues that as a result his decision not to testify was not voluntarily, knowingly, and intelligently made. We again disagree.

It is undisputed that the defendant had no prior felony criminal convictions. He did, however, have prior juvenile adjudications. The court did not inform the defendant in the *Curtis* advisement that these adjudications could not be used to impeach him if he chose to testify, and this omission forms the sole basis of defendant's argument.

■ It is the duty of the trial court to ascertain whether a defendant's decision to testify or remain silent is made voluntarily, knowingly, and intelligently. The defendant must be aware that he has a right to testify, knows of the consequences of testifying, and

is cognizant that he may take the stand notwithstanding the contrary advice of counsel. *People v. Curtis, supra.*

■ In a pre-trial hearing with the defendant and his counsel present, the court acknowledged that the defendant had no prior felony criminal convictions, but did have juvenile adjudications. The court concluded the People would not be permitted to impeach the defendant if he chose to testify by questioning him in regard to these prior juvenile adjudications. The propriety of this ruling is not disputed by either party.

The court informed the prosecutor that if for any reason he believed the adjudications could be used for impeachment, for example, if there were an exception for out-of-state adjudications, then he should file a brief within a week in support of that position. The court then stated that otherwise it would be assumed there were no convictions which could be used for impeachment. In response to further inquiry by defense counsel as to when the brief would be due, the court repeated that if no brief were filed there would be no impeachment by prior felony conviction.

The trial court complied with the procedural requirements of *Curtis* and its progeny. Under these circumstances, the court's advisement was sufficient, and there is competent evidence to support the conclusion that the defendant's decision not to testify was voluntarily, knowingly, and intelligently made. *See Roekler v. People*, 804 P.2d 1336 (Colo.1991).

## III.

Defendant next contends the trial court erred by submitting to the jury general verdict forms rather than special interrogatories for the crime of violence counts. We find no merit to this contention.

At trial, defendant objected to tendering the elements of the crime of violence "as separate counts" because it made it "sound like he's charged with a lot more things than he's really charged with." On appeal, defendant instead argues that the instructions and verdicts were deficient because, in failing to

use special interrogatories, the court did not specifically require the jury first to find that the underlying substantive offense was committed beyond a reasonable doubt. Because this separate argument was not raised in the trial court, we apply a plain error standard of review. *See* Crim.P. 52; *Ramirez v. People,* 682 P.2d 1181 (Colo.1984).

The court tendered four crime of violence instructions to the jury pertaining to the two first degree assault charges and two attempted aggravated robbery charges. Each is identical except that, where relevant, it specifies the underlying substantive offense. The jury was then given four separate verdict forms relating to each crime of violence count.

■ As relevant here, § 16–11–309(5), C.R.S. (1986 Repl.Vol. 8A) provides that the jury "shall make a specific finding as to whether the accused did or did not use, or possessed and threatened to use, a deadly weapon during the commission [of the underlying substantive crime]...." The focus of this requirement is on whether the instructions and verdict forms adequately inform the jury that it must find beyond a reasonable doubt that the defendant committed the underlying substantive offense *and* used, or possessed and threatened to use, a deadly weapon during its commission or attempted commission. *See People v. Powell,* 716 P.2d 1096 (Colo.1986); *People v. Smith,* 709 P.2d 4 (Colo.App.1985); § 16–11–309(2)(a)(I), C.R.S. (1986 Repl.Vol. 8A); *see also People v. Russo,* 713 P.2d 356 (Colo.1986); *Stroup v. People,* 656 P.2d 680 (Colo.1982).

■ Here, each instruction specified that the jury must find each element of the crime of violence beyond a reasonable doubt. The jury was adequately instructed on those elements, which included, as relevant here, that it find the crime of violence was committed during the commission or flight from the commission of the corresponding substantive offense. In turn, each instruction pertaining to the substantive offenses required the jury to find each element of the substantive offense beyond a reasonable doubt. Finally, in closing argument, the prosecutor distinguished the crime of violence counts from attempted aggravated robbery and first degree assault, stating essentially that in order to find the defendant guilty of crime of violence the jury must specifically find that the defendant was the perpetrator with the deadly weapon.

Under these circumstances, the effect is the same as providing the jury with special interrogatories, and thus, we conclude there was no plain error. *See People v. Smith, supra.*

## IV.

Defendant also contends the trial court committed reversible error when it prohibited him from introducing similar transaction evidence. We disagree.

Prior to trial, defendant filed a motion to admit similar transaction evidence concerning alleged robberies and attempted robberies committed by one of the two young men who were standing outside the car with defendant at the time of the stabbings. Defendant's theory of the case was that this other person, not defendant, had committed the assaults, and defendant was being "framed." None of the individuals in the victims' car were able to see the attacker's face. The only identifications of defendant at trial were by the two companions allegedly with defendant when the attacks occurred.

The alleged similar transaction occurred approximately seven months after the incident in this case. The only similarities articulated by defense counsel between this crime and the assertedly similar one were that both involved incidents in which a group of youths forcibly robbed or attempted to rob one or more victims. Defendant argues that it can be inferred from this evidence that both crimes were committed by the same individuals. Because defendant was confined during the period in which the second incident occurred, he could not have been involved in that incident. Thus, defendant argues the evidence was relevant to establish he did not commit the first crime.

The trial court concluded that the proffered testimony was not relevant and that, in any event, it should be excluded under CRE 403 because it was "too tenuous." The court

noted the other incident was not similar to the one at issue because it involved a plan to rob a pizza delivery man and because there were different weapons involved in the two crimes.

■ Similar transaction evidence proffered by the defendant is admissible if it is relevant to the guilt or innocence of the accused. "If all of the similar facts and circumstances, taken together, may support a finding that the same person was probably involved in both transactions, then evidence that the defendant did not commit the second transaction is relevant and admissible." *People v. Bueno*, 626 P.2d 1167, 1170 (Colo.App. 1981).

■ Here, the incidents were not so similar as to establish any distinctive method of committing the crimes. Moreover, any arguable relevance was mitigated by the fact that the other young man was present and presumably witnessed the crime with which defendant was charged. Hence, any similarities could have resulted from this person having knowledge gained from watching the attempted robberies which he then utilized in the later crime. For these reasons, the trial court did not abuse its discretion in prohibiting the introduction of the evidence. *See People v. Pack*, 797 P.2d 774 (Colo.App.1990).

## V.

■ The defendant next asserts that the prosecutor improperly referred to an alias during opening statements. He argues this alleged reference to an alias "implied to the jury that he [is] a member of a criminal class who [is] inherently suspect." We are unpersuaded.

At the commencement of his opening statement, while introducing the testimony the jury would hear, the prosecutor stated that there would be witnesses testifying concerning the defendant, who was known to some of the witnesses as "Casanova." During trial, there were other references by witnesses and the prosecutor to the defendant as "Casanova." At the conclusion of opening statements and at the close of all the evidence defendant requested a mistrial. He argued to the trial

court that "Casanova" was an alias and suggested a criminal past.

The court found, and we agree, that the nickname was not the kind of name which might connote violent behavior. Nor did it connote that defendant was a member of a criminal class and inherently suspect. Rather, it was a name by which the defendant was known to people who might not have known his real name and its use was solely for that purpose. The court therefore did not err in refusing to grant a mistrial. *See People v. DeHerrera*, 680 P.2d 848 (Colo.1984); *People v. Austin*, 799 P.2d 408 (Colo.App.1990).

## VI.

Defendant also contends the trial court committed reversible error by failing to instruct the jury correctly on complicity. We disagree.

Because defendant did not object to this jury instruction, we must analyze it under a plain error standard of review. *See Wilson v. People*, 743 P.2d 415 (Colo.1987); Crim.P. 52(b).

■ In the context of instructional error, plain error does not occur unless a review of the entire record demonstrates that the error so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *See People v. Hampton*, 746 P.2d 947 (Colo.1987).

■ Under the complicity instruction given here, the jury could convict on the charges of aggravated robbery and first degree assault even if the jury found defendant did not do the actual stabbings. However, by its verdicts on the crime of violence counts, the jury found the defendant guilty as a principal, not merely a complicitor. Thus, any error was not plain error. *See People v. Mershon*, 844 P.2d 1240 (Colo.App. 1992).

## VII.

Defendant's next contention is that attempted aggravated robbery is a lesser included offense of first degree assault and that, consequently, the convictions for attempted aggravated robbery are in violation

of the merger doctrine under § 18–1–408, C.R.S. (1986 Repl.Vol. 8B). In the circumstances presented here, we agree.

The defendant was found guilty of two counts of attempted aggravated robbery under §§ 18–4–302(1)(b) and 18–2–101, C.R.S. (1986 Repl.Vol. 8B), a class four felony, and two counts of first degree assault under § 18–3–202(1)(d), C.R.S. (1986 Repl.Vol. 8B), a class three felony. Prior to sentencing, defense counsel requested that the court merge the attempted aggravated robbery charges with the first degree assault charges. The court declined to do so, finding that there was evidence which could support separate verdicts to prevent merger.

Analyses of claims under both the doctrines of merger and double jeopardy employ the "same offense" test. Under this test, if each offense requires proof of a fact not required by the other offense, the offenses are sufficiently distinguishable for the purposes of both doctrines. *See People v. Henderson,* 810 P.2d 1058 (Colo.1991).

A panel of this court recently reversed a conviction for both first degree assault and sexual assault on a child. *See People v. Moore,* 860 P.2d 549 (Colo.App.1993). In *Moore,* the People had to prove that the defendant committed, or attempted to commit, sexual assault on a child in order to convict him of first degree assault. The panel concluded that the separately charged sexual assault on a child was necessarily a lesser included offense of the crime of first degree assault. This was in spite of the fact that, because the jury found provocation, merger resulted in a "lesser included" offense being merged into a felony with a less severe penalty.

As in *Moore,* the prosecutor in this case chose not to charge defendant with first degree assault under, for example, § 18–3–202(1)(a), C.R.S. (1986 Repl.Vol. 8B). This provision does not require proof of another offense but does require proof of an intent to cause serious bodily injury. Instead, the prosecutor chose to charge defendant with first degree assault under § 18–3–202(1)(d), which does not require proof of intent to cause serious bodily injury but makes a separate offense an element of the assault charged.

Here, the victims specified in the charges of first degree assault were the same victims specified in the charges of attempted aggravated robbery. The first degree assault instructions did not specify a separate robbery victim for the predicate offense. For the reasons stated in *People v. Moore, supra,* we conclude that the separately charged crime of attempted aggravated robbery of each victim is necessarily a lesser included offense of the crime of first degree assault on each victim.

Because the first degree assault was without provocation, merger does not result, as in *Moore,* in a "lesser included" offense being merged into a felony with a less severe penalty. Also, even though the predicate offense of each charge of first degree assault was attempted robbery rather than attempted aggravated robbery, because the predicate offense was a lesser included offense of the separate conviction for attempted aggravated robbery, the merger doctrine still applies. *See Boulies v. People,* 770 P.2d 1274 (Colo. 1989).

"In Colorado, the rule of merger precludes a conviction for a crime that is the lesser included offense of another crime for which the defendant has also been convicted in the same prosecution." *Boulies v. People, supra,* at 1282. Defendant's convictions for attempted aggravated robbery must therefore be vacated and the matter remanded for resentencing on the remaining convictions independent of the vacated convictions. *Cf. People v. Watkins,* 684 P.2d 234 (Colo.1984).

Because we vacate the convictions for the attempted aggravated robbery charges, it is unnecessary to address the defendant's arguments based upon the double jeopardy clauses of the Colorado and United States Constitutions and the rule of lenity.

## VIII.

Finally, defendant contends, and the People agree, the mittimus incorrectly indicated that defendant was required to serve one year of parole because this offense was committed on or after July 1, 1985. *See Qureshi*

*v. District Court,* 727 P.2d 45 (Colo.1986); §§ 17–22.5–303(6) and 17–22.5–303(7), C.R.S. (1986 Repl.Vol. 8A). We therefore vacate the period of parole stated in the mittimus. *See People v. Reyes,* 728 P.2d 349 (Colo.App. 1986).

### IX.

The judgments of conviction for two counts of attempted aggravated robbery are vacated, and the cause is remanded for resentencing on the remaining convictions. The period of parole included in the mittimus is vacated. The judgment in all other respects is affirmed.

RULAND, J., concurs.

ROTHENBERG, J., concurs in part and dissents in part.

Judge ROTHENBERG concurring in part and dissenting in part.

I respectfully dissent as to part VII of the opinion. I agree, however, with the views expressed in the remainder of the opinion.

In *People v. Rael,* 199 Colo. 201, 612 P.2d 1095 (1980), the defendant was charged with the same section of the first degree assault statute as is involved here and also was charged with the predicate offense of first degree burglary. After being convicted of both first degree assault and first degree burglary, Rael appealed, claiming that he could not be convicted of both offenses since they had merged.

Our supreme court rejected Rael's contention that there had been a merger. It stated:

> [F]irst-degree assault requires proof of serious bodily injury, which first-degree burglary does not, and first-degree burglary as charged requires proof of the intent to cause bodily harm, which the form of first-degree assault charged here does not. Thus, both crimes require proof of an additional fact not necessary in proof of the other.

*People v. Rael,* 199 Colo. at 204, 612 P.2d at 1097.

Similarly, here, first degree assault requires the element of serious bodily injury

which is not an element of attempted aggravated robbery. *See* 18–3–202(1)(d), C.R.S. (1986 Repl.Vol. 8B). And, attempted aggravated robbery as charged here requires proof that the defendant wounded or struck the person robbed with a deadly weapon which is an element not contained in the crime of first degree assault. *See* § 18–4–302(1)(b), C.R.S. (1986 Rep.Vol. 8B). Thus, I conclude *Rael* is dispositive of defendant's assertion that his two convictions merged.

Nor am I persuaded that *People v. Bartowsheski,* 661 P.2d 235 (Colo.1983) and *Boulies v. People,* 770 P.2d 1274 (Colo.1989) have eroded the vitality of *Rael* and now require a different result.

In *Bartowsheski* and *Boulies,* our supreme court held that the lesser crimes of robbery and aggravated robbery merged into the greater crime of first degree felony murder. However, the felony murder statute reflects a policy judgment by the General Assembly that a person who engages in inherently dangerous conduct which results in the death of another will be punished in accordance with the serious results of that conduct, even if the death was an unintended consequence of the original behavior.

Here, the felony murder statute is not involved.

In summary, given the important factual distinctions between *Rael* and the *Bartowsheski–Boulies* line of cases, I am not persuaded that our supreme court has implicitly overruled *Rael.*

I therefore would hold that defendant's conviction here for attempted aggravated robbery is not a lesser included offense of his conviction for first degree assault, and I would not reverse the attempted aggravated robbery conviction on that basis. *See People v. Moore,* 860 P.2d 549 (Colo.App.1993) (Rothenberg, J., dissenting in part from denial of People's petition for rehearing).